**Affirmed and Opinion filed March 17, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00952-CR

_____

**WILLIAM RAY PARKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 12CR2532**

## O P I N I O N

Appellant William Ray Parker pleaded guilty to murdering his ex-girlfriend, Angela Lopez. A jury assessed punishment at 99 years' confinement. Appellant challenges his sentence in three issues, contending that (1) he received ineffective assistance of counsel; (2) the sentence was "contrary to the law and the evidence"; and (3) the trial court abused its discretion in denying a mistrial because spectators wore purple clothes. We affirm.

# I.  INEFFECTIVE ASSISTANCE CLAIM

In his first issue, appellant contends he received ineffective assistance of counsel because his trial attorney did not request the appointment of a defense mental health expert and because counsel failed to investigate appellant's history of mental illness and alcoholism.  First, we review the general standards for ineffective assistance.  Then we review some of the evidence from appellant's trial and the hearing on appellant's motion for new trial.  Ultimately, we hold that appellant has not proven ineffective assistance.

## A.  Standard of Review and Principles of Law

To prevail on an ineffective assistance claim, an appellant must show that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010).  An appellant must satisfy both prongs by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

When an appellant asserts ineffective assistance of counsel in a motion for new trial, as here, we review the trial court's denial of the motion for an abuse of discretion. *Washington v. State*, 417 S.W.3d 713, 724–25 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).  We view the evidence in the light most favorable to the trial court's ruling, and we reverse only if no reasonable view of the record could support the trial court's finding. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013); *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—

2

Houston [14th Dist.] 2010, no pet.). We review de novo the trial court's decision on the prejudice prong while giving deference to the trial court's implied resolution of underlying factual determinations. *Washington*, 417 S.W.3d at 725.

## B.    Evidence from Trial and New Trial Hearing

Appellant pleaded guilty to murdering his ex-girlfriend, Lopez, and the jury assessed punishment. Appellant's trial counsel attempted to mitigate appellant's culpability by showing that appellant was a depressed alcoholic after his relationship with Lopez ended. Appellant's friend Nicole testified at trial that she was concerned about appellant's drinking and worried about him. She described an incident with appellant where he was drinking and crying all night a few weeks before he murdered Lopez: "He was very extremely intoxicated, frantic, crying, upset, you know, just babbling." Appellant said he was going to kill himself. Appellant's ex-wife testified at trial that appellant had been depressed after their divorce. Appellant's life-long friend Frank testified about how two of their close friends committed suicide, and after that, appellant became distant and very emotional; it was "real traumatic" for appellant. Before the murder, appellant was becoming more distant and not like himself. Frank thought appellant was going to kill himself, and "the drinking just really got out of hand." Clinical psychologist Dr. Jennifer Rockett testified that symptoms of depression include sadness and suicidal ideation and that people suffering from depression may use drugs and alcohol for self-medication.

Officer Jennifer Beaver testified at trial that someone reported to police that appellant was suicidal on the day of the murder. Detective Aaron Griswold testified that appellant had a blood alcohol level of .25 at the time of the murder, and from the officer's investigation, "it was very apparent that [appellant] was very much an alcoholic and consumed quite a bit of alcohol almost on a daily basis."

3

The only two witnesses to testify at the new trial hearing were appellant and his trial counsel, Jeremy Ducote. Ducote testified that he knew appellant had gone through periods of depression, but there was no documented history of clinical depression or medications that appellant took for depression, and there was no formal diagnosis of clinical depression. Ducote filed a motion for an insanity and competency evaluation, requesting the trial court appoint Dr. Victor Scarano, a forensic psychiatrist, to evaluate appellant under Articles 46C.101 and 46C.107 of the Texas Code of Criminal Procedure.[1] The trial court granted the motion and appointed Dr. Scarano to evaluate appellant and prepare a written report.[2] Ducote testified that Dr. Scarano was "not really . . . an expert for either side" and that he was an impartial advisor to the court.

According to Ducote, Dr. Scarano believed that appellant was not insane at the time of the murder because appellant demonstrated premeditation and awareness that his conduct was criminal. Ducote did not believe it would be beneficial to have Dr. Scarano testify. Ducote testified that his trial strategy was to present appellant's history of depression and alcoholism through friends and family rather than through a psychiatric expert who would not have known appellant very well and would be viewed as biased by the jury. Further, the State could have called Dr. Scarano as a rebuttal witness. Ducote testified that he discussed the possibility of hiring an expert with appellant and his family members

---

[1] *See* Tex. Code Crim. Proc. Ann. art. 46C.101 (a court may, on the defendant's motion, appoint a disinterested expert to evaluate the defendant); *id.* art. 46C.107 ("If a defendant wishes to be examined by an expert of the defendant's own choice, the court on timely request shall provide the examiner with reasonable opportunity to examine the defendant.").

[2] Appellant's "motion for examination regarding insanity" requesting the appointment of Dr. Scarano and the trial court's order appointing Dr. Scarano are in the clerk's record. Dr. Scarano's report is not in the record.

4

and the pluses and minuses of doing so.  They made a "collective decision" to not seek a second opinion.[3]

Appellant testified at the new trial hearing that his father and two sisters were alcoholics.  He testified he was treated for mental health issues "anywhere from probably three to eight, nine years" prior.  He testified that he had "mental issues, depression for a long time," and he told his lawyer to hire an investigator to "go out and search for these things," i.e., medical records.  When asked where he was treated, appellant responded that he was "self-medicating" with twenty to thirty pills of Vicodin a day.  However, appellant did not present any medical records or expert testimony concerning his depression or alcoholism.  Finally, the court also admitted affidavits from several of appellant's friends and family members, which generally alleged that Ducote was not responsive to them and did not prepare them very well for trial.

## C.    No Ineffective Assistance

Appellant has failed to demonstrate deficient performance or prejudice.  Notwithstanding the evidence that *appellant* ultimately made the decision to not request the appointment of a second mental health expert after Ducote discussed with him the pluses and minuses of doing so, Ducote testified that it was part of his

---

[3] Ducote's testimony is supported by the transcript of a hearing that occurred immediately before appellant pleaded guilty.  At that time, Ducote informed the trial court that appellant "believes that he may need a second opinion, that he may want to request this Court issue a second psychiatrist for purposes of assisting solely the Defense to evaluate him to see as to whether or not there is the availability for an insanity or temporary insanity affirmative defense."  The trial court noted that it was "his decision ultimately" whether appellant would plead guilty or obtain a continuance and second evaluation.  After a short evidentiary hearing with testimony from the Galveston County Jail mental health coordinator, the trial court took a short recess.  Ducote informed the court that he discussed the matter with appellant and his family, and they said they were "behind the decision to proceed as originally planned . . . to enter a guilty plea to the charge of murder."  Appellant then pleaded guilty without requesting the appointment of a mental health expert.

trial strategy to present appellant's history of depression and alcoholism through close friends and family rather than a biased medical expert. There is a strong presumption that Ducote's conduct falls within the wide range of reasonable professional assistance, and appellant has not rebutted this presumption. *See, e.g., Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689). Further, as the fact finder, the trial court was entitled to believe that Ducote investigated and learned of appellant's history of depression and alcoholism, and therefore, Ducote did not fail to investigate mitigation evidence. *See, e.g., Okonkwo*, 398 S.W.3d at 694.

Appellant relies on *Woods v. State*, in which the Texarkana Court of Appeals held that counsel was ineffective for not requesting the appointment of a second mental health expert to assist the defense and review the accuracy of an earlier mental health report that was favorable to the State. *See* 59 S.W.3d 833, 837–38 (Tex. App.—Texarkana 2001), *rev'd on other grounds*, 108 S.W.3d 314 (Tex. Crim. App. 2003). In *Woods*, counsel was made aware of the defendant's history of abuse and serious mental illness, which included many commitments to mental institutions and his hearing voices and experiencing hallucinations. *Id.* at 838. The court distinguished its earlier *Easley* decision, in which the court had held the record was inadequate to demonstrate a history of mental illness sufficient to require counsel to request the appointment of a mental health expert. *See id.* at 837 n.2 (citing *Easley v. State*, 978 S.W.2d 244, 250–51 (Tex. App.—Texarkana 1998, pet. ref'd)). In particular, the *Easley* court reasoned that the first expert's report may have influenced counsel's decision to not request the appointment of a second expert. *See* 978 S.W.2d at 250–51.

Here, as in *Easley*, Dr. Scarano's report is not in the record. And, Ducote testified that Dr. Scarano believed appellant acted with premeditation and an

6

insanity defense was not available. There is no suggestion that Dr. Scarano's report documented a history of mental illness as occurred with the defendant in *Woods*. Ducote testified that he relied on Dr. Scarano's opinions in deciding, at appellant's direction, to not postpone trial and request the appointment of a mental health expert. Accordingly, the record supports the trial court's implied finding that Ducote's conduct was the result of a reasonable trial strategy. Appellant has not demonstrated deficient performance related to Ducote's failure to request a mental health expert or further investigate appellant's depression and alcoholism.

To evaluate prejudice in the context of a failure to investigate or present mitigating evidence, this court must "'reweigh the evidence in aggravation against the totality of available mitigating evidence.'" *Washington*, 417 S.W.3d at 728 (quoting *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). We must "compare the evidence presented by the State with the evidence the jury did *not* hear due to counsel's failure to investigate." *Id.* at 725 (quotation omitted). However, at the new trial hearing, appellant did not introduce any medical records or expert testimony that were available and would have benefitted appellant. *See, e.g.*, *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony.").

Under these circumstances, appellant has not demonstrated prejudice as a result of Ducote's failure to request appointment of a second medical expert or to further investigate appellant's depression and alcoholism. *See Washington*, 417 S.W.3d at 725 (no prejudice for not requesting appointment of an investigator, testimonial expert, or consulting expert when there was no evidence of what a proper investigation would have revealed or what benefit would have been

obtained from an expert); *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd) ("[T]he failure to request the appointment of an expert witness is not ineffective assistance in the absence of a showing that the expert would have testified in a manner that benefitted the defendant."); *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd) (same).

The only new evidence appellant presented at sentencing through his own testimony—that his family members had been alcoholics and he took Vicodin in the past—likely would not have had an effect on appellant's punishment. *See Ex parte Martinez*, 195 S.W.3d 713, 731 (Tex. Crim. App. 2006) (although new mitigating evidence was "strong," it would not have "tipped the scale in applicant's favor" because "the jury was privy to some of the severe abuse applicant suffered during his childhood"). The jury was privy to a great deal of testimony about appellant's depression and alcoholism, as recited above. Accordingly, the new evidence did not "differ in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing." *Id.*

Appellant failed to prove ineffective assistance by a preponderance of the evidence, and the trial court did not abuse its discretion by denying appellant's motion for new trial. Appellant's first issue is overruled.

## II.    SUFFICIENCY OF EVIDENCE FOR PUNISHMENT

In his second issue, appellant contends the trial court abused its discretion by denying his motion for new trial because the jury's verdict on punishment was "contrary to the law and the evidence," citing Rule 21.3(h) of the Texas Rules of Appellate Procedure. *See* Tex. R. Civ. P. 21.3(h). Appellant contends this rule provides for a sufficiency review of his sentence, and "the mitigating and aggravating evidence at trial was insufficient to support the punishment of 99 years." The State contends that no such review is available in this court because

8

appellant's sentence fell within the prescribed range and appellant has not raised an Eighth Amendment gross-disproportionality claim. We agree with the State.

The Court of Criminal Appeals has "frequently observed that the task of setting a particular length of confinement within the prescribed range of punishment is essentially a normative judgment." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quotation omitted). Indeed, the court has "described the sentencer's discretion to impose any punishment within the prescribed range to be essentially unfettered." *Id.* (quotation omitted). "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Id.* at 323–24 (footnote omitted). Thus, a sentence that is within the legislatively prescribed range, based upon the sentencer's informed normative judgment, and in accordance with due process of law "is not subject to a sufficiency of the evidence review on appeal." *Jarvis v. State*, 315 S.W.3d 158, 162 (Tex. App.—Beaumont 2010, no pet.).[4]

Appellant's sentence of 99 years' imprisonment for murder falls within the legislatively prescribed range. *See* Tex. Penal Code Ann. §§ 12.32(a), 19.02(c). The jury heard from over twenty-five witnesses during a punishment phase that lasted four days. Thus, the sentence was based on their informed normative judgment. Appellant has not alleged an Eighth Amendment violation, and we address his due process argument below. Accordingly, we do not review the sufficiency of the evidence to support his sentence.

Appellant's second issue is overruled.

---

[4] Appellant points to no appellate decision that includes a sufficiency of the evidence review for a sentence within the legislatively prescribed range, and we find none.

### III. DENIAL OF MISTRIAL FOR JURY INFLUENCE

In his third issue, appellant contends the trial court abused its discretion in denying appellant's motion for a mistrial when sixty to seventy spectators and witnesses dressed in purple during the trial. Appellant contends he was denied a fair trial because the concerted wearing of purple was an inherently prejudicial external influence on the jury. We disagree.

### A. Standard of Review

We review a trial court's denial of a mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

### B. Background

Before trial, appellant informed the trial court that spectators supporting the family and victim intended to collectively wear the color purple to show support for the State and to make statements against family violence.[5] Appellant asked the court to "grant a mutual injunction as to either side collectively in concert wearing the same colors." The State acknowledged that purple is the color of "domestic violence awareness" and that spectators "did request that they be able to wear those colors in the Court." The State likened the situation to police officers wearing their uniforms during trial and asked the trial court to deny appellant's request. The trial court denied it.

On the first day of trial after jury selection, appellant moved for a mistrial because there were "approximately 60, 70 people wearing purple." Defense

---

[5] Defense counsel read aloud a Facebook post from Lopez's son: "The Court's basically starting this coming Monday. Testimony to begin on the 24th. Please, everybody, let's all wear the same color in support of my mom, support against domestic violence."

counsel also noted that the jurors "had to walk through and/or pass those individuals to go into the jury room" that morning. The State urged the court to allow spectators to "express their support for the victim." The court denied the mistrial.

## C.    No Inherent Prejudice

A defendant has a constitutional right "to be tried by impartial, indifferent jurors whose verdict must be based upon the evidence developed at trial." *Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014), *and Simpson v. State*, 119 S.W.2d 262 (Tex. Crim. App. 2003). When a defendant claims reversible error based on external juror influence, as here, the defendant must show either actual or inherent prejudice. *Id.* Appellant relies solely on the latter—inherent prejudice—and does not purport to show actual prejudice.[6]

"To determine inherent prejudice, we look to whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)). Essentially, the test is whether there is a "reasonable probability that the conduct or expression interfered with the jury's verdict." *Id.*[7] Inherent prejudice "rarely occurs and 'is reserved for extreme situations.'" *Id.* (quoting *Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir. 1988)).

---

[6] Actual prejudice requires showing that "jurors actually articulated a consciousness of some prejudicial effect." *Howard*, 941 S.W.2d at 117.

[7] The United States Supreme Court has not applied the *Holbrook* test to non-state-actor spectators' conduct. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006) (reversing a habeas decision because *Holbrook* did not provide "clearly established Federal law" as applied to non-state-actor spectators' conduct of wearing buttons depicting the victim; "although the Court articulated the test for inherent prejudice that applies to state conduct in [*Holbrook*], we have never applied that test to spectators' conduct"). In *Howard*, however, the Court of Criminal Appeals held that its previously adopted "reasonable probability" test concerning "spectator conduct or expression" was "essentially interchangeable" with the federal test applied in

Courts across the nation have applied the *Holbrook* test to spectator conduct involving emotional outbursts,[8] wearing buttons or clothing with written messages,[9] wearing buttons or clothing with the victim's image,[10] wearing ribbons,[11] and wearing identifiable law enforcement uniforms.[12] Neither party, nor this court, has found a case involving spectators' wearing clothing of a particular color in concert.

In *Howard*, the Court of Criminal Appeals held there was no inherent prejudice when twenty police officers wore their uniforms during the punishment phase of trial of a defendant who murdered a police officer. 941 S.W.2d at 117–18. The high court noted that the facts giving rise to the claim of inherent prejudice included "only the *presence* of twenty uniformed officers, sitting near the back of the courtroom, mingled with 80 other spectators." *Id.* at 117. The record

---

*Holbrook* concerning state-actor spectators' conduct. *See Howard*, 941 S.W.2d at 117. Accordingly, we apply the test for inherent prejudice articulated in *Howard* and *Holbrook*.

[8] *See, e.g.*, *Maxson v. State*, 79 S.W.3d 74 (Tex. App.—Texarkana 2002, pet. ref'd); *Moreno v. State*, 952 S.W.2d 44 (Tex. App.—San Antonio 1997, no pet.).

[9] *See, e.g.*, *Norris v. Risley*, 878 F.2d 1178 (9th Cir. 1989); *Long v. State*, 151 So. 3d 498 (Fla. Dist. Ct. App. 2014); *State v. Allen*, No. 89917-7, — P.3d —, 2015 WL 196496 (Wash. Jan. 15, 2015).

[10] *See, e.g.*, *Davis. v. State*, 223 S.W.3d 466 (Tex. App.—Amarillo 2006, pet. ref'd, untimely filed); *Nguyen v. State*, 977 S.W.2d 450 (Tex. App.—Austin 1998), *aff'd*, 1 S.W.3d 694 (Tex. Crim. App. 1999); *State v. Lord*, 165 P.3d 1251 (Wash. 2007); *see also Carey*, 549 U.S. at 82–83 (Souter, J., concurring) ("[O]ne could not seriously deny that allowing spectators at a criminal trial to wear visible buttons with the victim's photo can raise a risk of improper considerations. The display is no part of the evidence going to guilt or innocence, and the buttons are at once an appeal for sympathy for the victim (and perhaps for those who wear the buttons) and a call for some response from those who see them. On the jurors' part, that expected response could well seem to be a verdict of guilty, and a sympathetic urge to assuage the grief or rage of survivors with a conviction would be the paradigm of improper consideration.").

[11] *See In re Woods*, 114 P.3d 607 (Wash. 2005).

[12] *See, e.g.*, *Johnson v. State*, 406 S.W.3d 892, 913 n.4 (Mo. 2013) (en banc) (Breckenridge, J., concurring in part and dissenting in part) (collecting cases), *cert. denied*, 134 S. Ct. 1495 (2014); *Howard*, 941 S.W.2d 102

was too sparse to establish that there was an unacceptable risk of impermissible factors affecting the jury or a reasonable probability that the conduct interfered with the jury's verdict. *Id.* at 117–18. The court noted, however, that there "might be some basis for appellant's argument" if the record had indicated "some overt conduct or expression, or perhaps a higher ratio of police officers, or even perhaps some indication that the law-enforcement contingency gravitated toward the jury." *Id.* at 118. The court did not intend to "give carte blanche approval to police officer-spectators in a courtroom," but in this case, "their presence did not overwhelm the composition of the spectator gallery." *Id.* at 118 n.14.

Here, the record indicates that there were sixty to seventy spectators wearing purple,[13] but there is no indication that there was overt conduct by the spectators or that they gravitated toward the jury. The record also does not establish the *ratio* of spectators with purple dress to those not wearing purple. Thus, even more so than in *Howard*, the record is too sparse to conclude that appellant suffered inherent prejudice based on spectators' wearing the color purple.[14]

Something else distinguishes this case from those involving police officer uniforms, express written messages, and pictures of the victim: the color purple does not convey an obvious message. Although the State acknowledged, outside the jury's presence, that purple was the color of domestic violence awareness, nothing in the record indicates the jury was aware of that fact or that the spectators were wearing purple in support of Lopez. This case, therefore, is most similar to *In re Woods*, where the Supreme Court of Washington held that the courtroom

---

[13] *See Pitts v. State*, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996) ("This Court accepts as true factual assertions made by counsel which are not disputed by opposing counsel.").

[14] We note also that appellant's claim on appeal that witnesses wore purple is not established by the record. When counsel moved for a mistrial, he complained only about the large number of spectators wearing purple. The record does not indicate that any particular witness wore purple.

13

atmosphere was not inherently prejudicial when spectators wore black and orange ribbons in support of the victim. *See* 114 P.3d at 616–17. The ribbons did not contain any inscription and did not express any message about the defendant's guilt. *Id.* at 616. Thus, the case was distinguished from one where spectators wore buttons inscribed with "Women Against Rape" during a rape trial. *See id.* (citing *Norris*, 918 F.2d 828).

Appellant's case is distinguished from a Florida decision cited by appellant. The Florida court concluded the defendant suffered inherent prejudice by the presence of twenty-five uniformed police officers. *See Shootes v. State*, 20 So. 3d 434 (Fla. Dist. Ct. App. 2009). In *Shootes*, half or more of the spectators were uniformed police officers, *id.* at 436, and the substantial number of officers "sat together as a group in the seats closest to the jury," *id.* at 439. The court reasoned that police officers dressing in uniform, although silent, may nonetheless communicate a message to the jury that they want a conviction. *See id.* (citing *Woods v. Dugger*, 923 F.2d 1454, 1459–60 (11th Cir. 1991)). Further, the *Shootes* court distinguished its case from those in which spectators might wear clothing merely to show support for a victim. *See id.* at 439–40. The charge was aggravated assault of a police officer, the defendant's self-defense claim was based on his assertion that he thought the police he fired upon were robbers, and there was conflicting testimony about whether their clothing and appearances should have alerted the defendant to their identities as police officers. *See id.* at 436, 439–40. As such, the display of the uniformed officers in the courtroom created an unacceptable risk that the jury's determinations of credibility and findings of fact "would be tainted by impermissible factors not introduced as evidence or subject to cross-examination." *Id.* at 440.

Here, the meaning of the color purple was never articulated to the jury and it was not directly related to any issue in the case. And unlike in *Shootes*, this record does not indicate that half or more of the spectators wore purple or that those spectators gravitated toward the jury. *Shootes* is neither controlling nor persuasive.

We conclude that the record in this case does not reveal an unacceptable risk of impermissible factors affecting the jury, or a reasonable probability that the concerted wearing of purple by an unknown ratio of spectators affected the jury's verdict. Thus, we hold that appellant has not demonstrated inherent prejudice, and the trial court did not abuse its discretion in denying appellant's motion for a mistrial.

Appellant's third issue is overruled.

## IV. CONCLUSION

Having overruled all of appellant's issues, we affirm trial court's judgment.


/s/    Sharon McCally
Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Publish — Tex. R. App. P. 47.2(b).