**Affirmed and Memorandum Opinion filed November 8, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00330-CR

**SYLVIA MARIE COLLINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1390220**

## MEMORANDUM OPINION

Appellant, Sylvia Marie Collins, appeals her conviction for aggravated assault with a deadly weapon. In two issues, appellant contends the trial court erred by denying appellant's motion for new trial based on ineffective assistance of counsel. We affirm.

### I. BACKGROUND

Appellant pleaded guilty to aggravated assault with a deadly weapon,

namely an unknown object—a second-degree felony—without a recommendation as to punishment, which was a range of two to twenty years' confinement. Appellant filed a motion requesting community supervision. The trial court then conducted a Presentence Investigation ("PSI") hearing on punishment.

At the hearing, the State presented, inter alia, the PSI report from the county's community-supervision department and the complainant's testimony. According to the State's evidence, on May 26, 2013, the seventeen-year-old female complainant was involved in an altercation with appellant's aunt, apparently regarding allegations they were both dating the same man. Later that night, complainant was walking along a road with that man and another companion when a car driven by appellant swerved and struck complainant, pushing her into a ditch. Appellant's cousin (the aunt's daughter) exited the passenger side of the car and started a fist fight with complainant. Appellant then exited the car and stabbed complainant seven times—in her abdomen, back, and legs—while repeatedly exclaiming, "Die bitch, die." Appellant and the cousin then sped away. Complainant required surgery and therapy, can no longer bear children, and suffers lingering emotional effects from the attack.

Appellant testified at the PSI hearing and presented a different version of events, as follows. Complainant and her boyfriend were fighting with appellant's cousin in appellant's yard after some earlier altercation. Appellant noticed that complainant had a knife, so appellant attempted to break up the fight. When appellant tried to take the knife away, complainant kicked appellant, who was seven-months pregnant, in the stomach. Appellant took the knife and stabbed complainant because appellant thought complainant was trying to harm appellant's baby. The boyfriend returned to help complainant, and appellant went in the house. Appellant denied saying "Die bitch, die" or entering her car during this

2

incident. Appellant expressed regret about injuring complainant, requested probation for the sake of appellant's children, and stated she planned to speak at her church to persuade other youths to avoid trouble.

After hearing the evidence, the trial court denied appellant's application for community supervision and sentenced her to eight years' confinement. Appellant filed a motion for new trial, claiming she received ineffective assistance of counsel. After a hearing, at which the parties presented affidavits and other exhibits but no live testimony, the trial court denied the motion.

## II. ANALYSIS

In two issues, appellant contends the trial court erred by denying the motion for new trial because trial counsel was ineffective with respect to the plea and sentencing procedures. To prevail on an ineffective-assistance claim, a defendant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

When a defendant asserts ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We view the evidence in the light most favorable to the ruling and reverse only if no reasonable view of the record could support the ruling. *Id.* We review *de novo* the

3

trial court's decision on the prejudice prong while giving deference to the trial court's implied resolution of the underlying factual determinations supporting denial of the motion even when based solely on affidavits. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Parker*, 462 S.W.3d at 562.

**A.     Claim regarding advice relative to plea proceeding**

First, appellant contends her trial counsel was ineffective relative to the plea proceeding by (1) advising appellant to reject a plea bargain for five years' probation because counsel opined appellant would receive deferred adjudication after a PSI hearing, and (2) failing to explain the open guilty plea that appellant ultimately entered could result in prison time. According to appellant, this allegedly deficient advice rendered her plea involuntary because she would not have rejected the plea bargain and entered the guilty plea if she had known she might receive prison time.

Initially, we note that in appellant's written motion for new trial and at the hearing thereon, she did not challenge counsel's performance relative to any plea-bargain offer or the guilty plea. Rather, appellant contended only that counsel was ineffective with respect to the PSI hearing by failing to investigate and present mitigating evidence. Appellant's only mention in the trial court regarding counsel's performance relative to the plea proceeding was a paragraph in appellant's affidavit attached to her motion for new trial and presented at the hearing. Appellant averred,

> At the beginning of the case, I remember being offered a plea bargain of 5-years probation. [Counsel] told me that I didn't need that felony on my record and that we should go for a PSI because she thought I would get deferred adjudication after a PSI hearing. She never told me that the judge could sentence me to prison time after a PSI. If she had, I would have taken the 5 years probation that had been offered.

4

At the hearing on the motion for new trial, the State presented an affidavit from appellant's trial counsel, who averred relative to the plea proceeding,

> Upon communicating with the Assistant District Attorney representing the State of Texas, I conveyed all offers made directly to [appellant] for her consideration. . . . The case was set for jury trial and after advising [appellant] of her offers, she decided to plea [sic] guilty to the Judge without an agreed recommendation, and allow the Judge to assess punishment. I recall filing a motion for community Supervision and the judge admonishing [appellant] that he would consider the full range of punishment. The full range of punishment included "Community Supervision." I advised the client after the admonishment that it would be the Judge's decision after the hearing on whether or not she would get "Community Supervision." At the hearing I did verbally and on record request for "Community Supervision." Therefore, before and after the PSI hearing I advised her of the range of punishment and that there was no guarantee that the Judge would grant her a [sic] probation. I also advised [appellant] that she had a right to have this case tried to a jury of her peers with all due process requirements being available to her. I discussed in full the various possible outcomes that would come from a trial, but [appellant] did not want to go to trial due to the risk of possible confinement. [Appellant] did not want to go to trial and wanted to plea guilty without and [sic] agreed recommendation. I advised [appellant] about the consequences of her plea and the nature of the pre-sentence investigation, and she indicated she wanted to move forward.

> On the date of the plea, I was present and went over all the plea papers with [appellant]. I again reiterated to her at that time that this matter was not yet final, and she could still go to trial. Ms. Collins again stated that she did not want to go to trial, and that she wanted to move forward with her plea.

The parties presented no other evidence concerning trial counsel's performance relative to the plea proceeding. Assuming without deciding that appellant

preserved her complaints of ineffectiveness regarding the plea offer and guilty plea, we conclude appellant failed to establish ineffectiveness.[1]

### 1. Rejection of plea-bargain offer

Except for appellant's own averment, there is no other indication in the record that she was offered a plea bargain calling for five years' probation or any reasons counsel advised appellant to reject such an offer, assuming it was made. In her affidavit, trial counsel averred that she relayed all offers to appellant, but counsel neither confirmed nor denied that there was an offer of five years' probation. As judge of witness credibility, the trial court was free to reject appellant's self-serving averments although they were uncontroverted. *See Riley*, 378 S.W.3d at 457; *Melton v. State*, 987 S.W.2d 72, 75 (Tex. App.—Dallas 1998, no pet.). Moreover, an attorney's prediction that a particular plea strategy is likely to result in a lower sentence is not ineffective simply because it proves inaccurate. *Graves v. State*, 803 S.W.2d 342, 345, 347 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Accordingly, appellant failed to prove counsel gave deficient advice relative to any plea-bargain offer.

### 2. Advice on plea entered

Appellant also maintains her plea was involuntary because she would not have pleaded guilty if counsel had advised that the open plea could result in a

---

[1] The State asserts appellant failed to preserve error on her complaint regarding counsel's purported advice to reject the plea bargain because appellant did not raise the issue in her motion for new trial. The State cites a case holding that a defendant may challenge voluntariness of a plea at any time. *See Soto v. State*, 837 S.W.2d 401, 404 (Tex. App.—Dallas 1992, no pet.). Thus, the State suggests appellant may raise her complaint regarding counsel's advice relative to the open plea for the first time on appeal. But the State maintains the two complaints are separate and that the first does not concern voluntariness of the plea ultimately entered. We need not decide whether appellant was required to raise either complaint in her motion for new trial or whether the mere mention in the affidavit satisfied such requirement because we conclude appellant failed to prove ineffective assistance relative to both complaints.

prison sentence. "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). When a defendant enters a plea on advice of counsel and subsequently challenges the voluntariness of that plea based on ineffective assistance, the voluntariness issue depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

In counsel's affidavit, the timing of some of her advice that appellant might not receive probation is unclear if each averment is taken in isolation; for example, counsel's general statements that she gave such advice "after" the trial court's admonishments and "before" the PSI hearing do not make clear whether the advice was given before appellant entered the plea. But, the collective import of the averments and the plea documents is that counsel explained to appellant before she entered her plea that community supervision was not guaranteed. Counsel averred that on the date of the plea, she "went over" all the plea documents with appellant and reiterated the matter was not yet final and appellant could still go to trial; those documents included the trial court's admonishment that the range of punishment was two to twenty years' confinement. Moreover, on the plea documents, counsel attested her belief that appellant knowingly and voluntarily executed the documents "after [counsel] fully discussed it and its consequences" with appellant. At the hearing on the motion for new trial, the trial court was free to believe counsel's affidavit instead of appellant's and rely on counsel's attestation on the plea documents. Accordingly, appellant did not establish counsel performed

7

deficiently by failing to inform appellant a prison sentence might result from her open plea.  We overrule appellant's first issue.

## B.     Complaint regarding potential mitigating evidence

In her second issue, appellant argues her trial counsel was ineffective by failing to investigate and present mitigating evidence during the PSI hearing. Appellant contends she would have received a lesser punishment—deferred adjudication, community supervision, or a shorter prison term—if trial counsel had proffered evidence regarding appellant's mental health and character.

During her own testimony at the PSI hearing, appellant made two references to her psychiatrist when describing her regret over the incident, but counsel did not further elicit testimony regarding mental illness or its connection to the offense. The PSI report, admitted at the PSI hearing, made several references to mental health and more specifically that appellant has been treated by a psychiatrist every two months since 2010 for Bipolar Disorder and Anxiety, is prescribed Seroquil and Lexapro, and receives a monthly disability check because of these conditions. However, no other evidence regarding mental health was offered at the PSI hearing.  Rather, appellant's defense was to dispute the State's version of the incident, suggest she acted in self-defense when breaking up a fight between others, and express remorse for her conduct.

To support her motion for new trial, appellant submitted her own affidavit and her mother's affidavit.  In her affidavit, appellant averred, in pertinent part:

> The first time I met with [trial counsel] I explained to her that I had been diagnosed with a mental illness in 2010 and had been prescribed psych meds that helped me control my symptoms. I also told her that I had voluntarily taken an outpatient class through IntraCare Behavioral Health Clinic that focused on teaching me how to control and cope with my mental illness. I told [trial counsel] that, under the advice of

my ob/gyn, I stopped taking my medications while I was pregnant. I also told [trial counsel] that when this incident happened, I was not on my meds and I felt that I could not control myself without the medications and that I felt that being off my psych meds contributed to this incident.

The mother's affidavit generally reiterated appellant's: appellant was withdrawn until her psychiatrist found the right medication in 2012 and she began to act like her "normal and happy self"; her obstetrician instructed her to cease the medication while she was pregnant; the withdrawal made her "quick tempered"; she had never been violent or in trouble before the incident at issue; and it would not have occurred if she had been on medication. Appellant also submitted medical records (which the trial court ordered sealed) and a letter from a doctor.

In trial counsel's affidavit, the only statement regarding an inquiry into mitigating mental-health evidence was the following:

I also spoke to [appellant] in regards to any other possible Medical Defenses. At that time, she said there were no known medical conditions. She stated she had been going to counseling after the charge for being depressed and stressed because of the charge and losing her job.

However, appellant maintains that based on the references in the PSI report and the information purportedly provided by appellant, trial counsel should have been alerted to appellant's mental illness, obtained the records, and proffered evidence regarding the mental illness at the PSI hearing.

As appellant asserts, counsel did not present any character evidence at the PSI hearing. To support her motion for new trial, appellant relied on her own affidavit, her mother's affidavit, and letters from her pastor and fellow church members. In appellant's affidavit, she swore that (1) she gave counsel one character letter plus a certificate reflecting steady employment, which were not

part of the PSI, (2) appellant wanted to collect letters and present testimony from numerous sources regarding appellant's character and her support in the community, and (3) appellant asked counsel to have appellant's mother testify and the mother was present and ready to testify. In the mother's affidavit, she confirmed counsel's office had prepared her to testify and she was present at the PSI hearing and willing to testify that appellant is a good mother to her two children, involved in her church and community, has maintained steady employment, and has cared for an ailing relative. In their letters, the pastor and church members collectively described appellant's good character, devotion to her children, and involvement in the church and community, and the support available if she were given probation.

Trial counsel's affidavit is silent regarding any potential character evidence. Counsel did not respond to appellant's evidence by claiming she made a strategic decision to forego presenting such evidence.

The crux of appellant's contention is that she would have received a lighter sentence if counsel had presented mitigating evidence because it demonstrated the offense was out of character for appellant and committed only because she had withdrawn from medication that typically controlled her anger resulting from mental illness. We need not decide whether counsel was deficient in failing to investigate and present mitigating evidence because appellant did not establish she was prejudiced by any such deficiency.

To evaluate prejudice in the context of a failure to investigate or present mitigating evidence, "'we reweigh the evidence in aggravation against the totality of available mitigating evidence.'" *Washington v. State*, 417 S.W.3d 713, 728 (Tex. App.—Houston [14th Dist.] 2013, pet ref'd) (quoting *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). We compare the

10

evidence presented by the State with the evidence the trier of fact did not hear due to counsel's failure to investigate. *Id.* at 725.

In this case, the State's evidence at the PSI hearing demonstrated the offense was egregious. Appellant and her cousin essentially ambushed complainant as she walked down a road because of an earlier dispute between complainant and appellant's aunt. Appellant not only struck complainant with appellant's car but then while appellant's cousin beat complainant, appellant stabbed complainant multiple times, saying, "Die bitch, die." Complainant continues to suffer emotional and physical damage from the assault, including the inability to bear children. In fact, at the PSI hearing, the trial court orally remarked that it denied community supervision because appellant's actions were "totally egregious."

Even then, appellant's sentence of eight years was on the lower end of the range of punishment—two to twenty years. Thus, the trial court could have considered the evidence in the PSI report showing appellant has Bipolar Disorder and Anxiety. Indeed, the trial judge remarked at the motion-for-new-trial hearing that he took appellant's mental-health issues into account in imposing the sentence. We have reviewed the medical records and cannot conclude they would have further mitigated the sentence; they do not add information to what the trial court could have inferred during the PSI hearing from the fact that appellant has Bipolar Disorder and Anxiety.[2]

Appellant emphasizes that the PSI report did not demonstrate the "essential fact" that appellant had no means to manage her disorders at the time of the offense because she had withdrawn from her psychiatric medications due to her pregnancy.

---

[2] As noted above, the medical records were sua sponte sealed by the trial court. Because appellant did not object to that action and has not moved to unseal the records, we have not discussed their content in this opinion.

11

Appellant suggests the PSI report indicated appellant's condition was controlled by medication but further testimony would have disputed that notion. We disagree that testimony from appellant or her mother regarding such alleged withdrawal would have further mitigated the sentence. The PSI report indicated appellant was prescribed medications for her disorders but did not reflect her disorders were under control; instead, the report reflected that appellant suffered Bipolar Disorder and Anxiety to the extent she was considered disabled and received a monthly disability check. Consequently, we conclude the PSI report already served as mitigating evidence by suggesting appellant had continual symptoms from her disorders.

We recognize appellant presented the one-sentence letter from her doctor stating he had treated her since 2010 for Schizoaffective Disorder, for which she takes medications. However, the doctor's one-sentence statement did not include any opinions regarding any symptoms appellant experienced separate from Bipolar Disorder and Anxiety, whether she had withdrawn from medications at the time of the offense, or the effects of any such withdrawal. Moreover, the doctor did not state whether he would have been available to testify at the PSI hearing or the substance of any such testimony relative to a connection between Schizoaffective Disorder and the offense. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (stating party claiming ineffective assistance based on uncalled witness must show witness had been available to testify and his testimony would have benefitted the defense).

Finally, the information regarding appellant's character was somewhat cumulative of the PSI report which indicated she had family support, cared for her two children and a sick relative, and was involved in church. Again, the trial court could have considered those factors when sentencing appellant. We reject the

12

proposition that additional evidence regarding appellant's character and involvement in the church and community would have further mitigated the sentence, considering the egregious nature of the offense.

In summary, because appellant has not established there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency, we overrule her second issue.

We affirm the trial court's judgment.


_____
John Donovan
Justice


Panel consists of Justices Busby, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).