**AFFIRM; and Opinion Filed May 21, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00821-CR

**GORDON C. BANE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 297th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1464818D**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Appellant, Gordon C. Bane, was convicted of the felony offense of assault family violence and sentenced to fifteen years' imprisonment. On appeal,[1] appellant claims that the trial court abused its discretion by denying his motion for new trial based on ineffective assistance of trial counsel. We affirm.

## Background

The facts surrounding the offense are well known to the parties and appellant has not challenged the sufficiency of the evidence to support his conviction. Consequently, we will set out only an abbreviated background of the facts in this opinion.

---

[1] On July 12, 2017, this appeal was transferred to this Court from the Second District Court of Appeals in Fort Worth under a docket equalization order from the Texas Supreme Court.

On July 22, 2016, a party was held at the Fort Worth, Texas home of Misti Ortega. Ortega was a close friend of Amanda Spigler, who was in a dating relationship with appellant and living with him. At trial, six witnesses – Ortega, Eric Michael Goodwin, Jason Heath Hunka, Jessica Lynn Mixon,[2] Justin Heath Cash, and Tara Tidwell Schneider – testified that appellant punched Spigler in the face at this party. Hunka tackled appellant to the ground and stayed on top of him until the police arrived.

Spigler, however, testified that appellant had not punched her. Rather, she lost her balance and fell when appellant "kind of" pushed her. While Spigler claimed not to have suffered any injuries, a responding officer testified that three photographs he took of Spigler that night showed a "cut to the bottom right lip" and a small bruise to the upper right lip." These photographs were admitted into evidence.

The jury heard evidence of a previous altercation between appellant and Spigler in which the Navarro County Sheriff Department was called. This incident, during which appellant grabbed her foot and pulled Spigler off her bed in front of her five-year-old daughter, did not result in the filing of any charges. Appellant did not testify during the guilt/innocence phase of his trial. The jury returned a verdict finding appellant guilty of assault family violence.

During the punishment phase of trial, the jury heard evidence of appellant's criminal history. This history included appellant being placed on three years deferred adjudication probation for assault on a family member in 2011, a conviction for aggravated assault with a deadly weapon in 2005, and two convictions for harassment in 1995.

At the punishment phase of his trial, appellant testified against the advice of his trial attorney, Brian Salvant. As appellant admits in his brief to this Court, during his testimony he "cursed in front of the jury panel, vociferously argued with the prosecutor, repeatedly gave

---

[2] Mixon is Spigler's sister.

nonresponsive answers while speaking over the prosecutor resulting in his repeatedly being admonished by the trial court and the court reporter." Appellant denied punching Spigler and stated that he did not agree with the jury's guilty verdict.

The jury returned a punishment verdict of fifteen years' imprisonment.

### Motion for New Trial: Allegations and Testimony

Following the conclusion of the trial, appellant filed a motion for new trial alleging ineffective assistance of trial counsel. Specifically, appellant claimed that his trial attorney 1) failed to interview the relevant witnesses, 2) failed to fully advise appellant as to the potential danger and consequences of testifying as a witness, and 3) failed to prepare appellant for "testifying in this matter." On appeal, appellant has abandoned the allegation that his trial attorney failed to interview relevant witnesses[3] and relies on his allegations of ineffective assistance of counsel due to trial counsel's alleged failures to warn him of the potential danger and consequences of testifying and to prepare him as a witness.

A hearing was held on appellant's motion for new trial.

---

[3] At the hearing on the motion for new trial, the six witnesses to the assault – Ortega, Goodwin, Hunka, Mixon, Cash, and Schneider – testified that while they had spoken with the district attorney prior to trial they had not been contacted by Salvant.

Salvant testified that he knew these witnesses would all be adverse to appellant. When Spigler's sister, Mixon, would not return calls or speak with the defense, it became a part of Salvant's trial strategy, which he explained to both appellant and Spigler, not to talk to those witnesses:

> [I]t was part of my trial strategy . . . once I realized that they weren't going to be friendly to us. I did not want to give them any indication of the questions that I would be asking because I felt like, at that point, if I started to talk to them about what my strategy would be, that they would then go to . . . the State, and then . . . (the State) . . . would be able to prepare them. So I wanted to keep them in the dark as much as I possibly could . . .

Based on what the witnesses had told the police and the statements they had given, Salvant knew how these witnesses would answer his questions.

The trial court, in its findings dictated to the court reporter, found that this was part of Salvant's trial strategy.

At that hearing, appellant admitted that, at the conclusion of the guilt-innocence phase of the trial, he testified he had been pleased with Salvant's representation. His opinion of that representation changed after the guilty verdict was returned.

Appellant testified that Salvant failed to meet with him or to speak with him meaningfully about the case except on "one occasion that Friday evening before jury selection on Monday." Prior to that, appellant had not been afforded an opportunity to have the evidence on the State's file shown to him.

Appellant also testified that, despite telling Salvant he wanted to testify, Salvant did not prepare him to testify, nor did he tell appellant that all of his prior offenses could be brought up if he did testify. Appellant admitted that Salvant had "mentioned that my past could be brought up" but he averred that Salvant did not discuss this with him in detail. According to appellant, when he told Salvant that he wanted to testify on the day of trial, Salvant did not ask the trial court for any additional time so that he could prepare appellant for his testimony. As a result, appellant claimed that he was not fully informed about the extraneous offenses which formed the bulk of the State's cross-examination of him at punishment. Consequently, he was not prepared to testify.

Salvant also testified at the hearing on the motion for new trial. He had been a licensed attorney since 1998. He had worked for four years as an assistant district attorney and another four years as a municipal judge in Fort Worth. Other than that employment, Salvant was engaged solely in the practice of criminal defense law.

Salvant had been retained by appellant to represent him in this case shortly after an initial appearance had been made by another attorney. Salvant had known appellant since high school and had previously represented appellant on an assault family violence case in 2011. On that case, appellant had been placed on deferred unadjudicated probation.

Appellant was on bond while he awaited trial on this case. Salvant testified that there were many pre-trial hearings which both he and appellant attended. Their relationship started out fine, but once Salvant tried to convey plea bargain offers to appellant, appellant would shut down communications. According to Salvant, appellant was not interested in any plea negotiations and would say "I'm not taking anything, I'm not taking anything."

Salvant testified that appellant would set up meetings, then fail to show up for those meetings. On the occasions that they did meet appellant "never wanted to prepare for anything. He just wanted to talk about how he was the victim." Salvant tried to discuss the evidence with appellant and "what different people were saying about him and about what happened that night." However, appellant constantly assured Salvant that none of the witnesses were going to show up at trial.

Salvant testified that appellant kept "flip-flopping" back and forth about whether he wanted to testify. Salvant told appellant that, if he testified, the State could cross-examine him on his past criminal history. Salvant advised appellant not to testify, telling appellant that it would be a "terrible idea," a bad idea for the defense, and that he did not think appellant would make a very good witness.

With regard to appellant's criminal history, Salvant told appellant that if he did testify it would "open the door to everything" including appellant's prior assault charge. Salvant testified that he explained to appellant the type of questions the State might ask about his prior criminal history and that the State would be allowed to question him about his prior convictions.

Salvant testified that he knew appellant was upset with the guilty verdict. When appellant told Salvant that he wanted to testify right before the start of the punishment phase of the trial, Salvant again advised him not to testify. Salvant based his opinion on his knowledge of appellant as well as the fact that the jury had just returned a guilty verdict:

Typically, in my experience, especially with these types of cases, whenever the defendant . . . testifies, whether it be in the guilt/innocence or in the punishment phase, they don't come across real well. They come across very arrogant, come across as being angry, especially because they had just been found guilty.

And . . . I've known . . . (appellant) . . . for a very long time, and . . . after . . . the verdict came back, which nobody would be happy with . . . I could tell he was very upset, and I just didn't think that given . . . his past, that he was going to come across very well.

Appellant, however, was adamant that he wanted to testify at the punishment phase.

When asked if he thought there was anything he could have done to help better prepare appellant for the State's questioning, Savant replied as follows: "I don't think that there is one other thing that I could have done to help this gentleman's case. I . . . did everything that I possibly could. He just didn't listen to my advice, and we still almost had a hung jury."[4]

At the conclusion of the hearing, the prosecutor, in argument to the trial court, offered his opinion as to Salvant's representation of appellant at trial:

And finally, Judge, I know this is not evidence for the Court to consider in reaching its decision, but I tried this case at the trial level. I've worked many cases with Mr. Salvant, and my opinion as his opposing counsel at the trial level is that he did a superb job in presenting his case.

In denying appellant's motion for new trial, the trial court dictated the following findings of fact to the court reporter:

THE COURT: Okay. To prevail on the Strickland claim, you have to show that defense counsel's performance was deficient to the extent that defense counsel failed to function as the counsel that is guaranteed by the Sixth Amendment. In other words, his performance had to have fallen below an objective standard of reasonableness under prevailing professional norms. I do not find that here. I cannot find that – I mean, aside from the fact that none of the evidence that was presented in yesterday's hearing and today's hearing, none of the evidence shows that the outcome would have been different or that any of the witnesses would have changed their testimony . . . or would have resulted in a different result on punishment aside from the fact that defense counsel had the entire State's file and reviewed it . . .

---

[4] At one point the trial court received a note from the jury stating "We the jury can not come to a decision. We are a hung jury." In response to this note, the trial court recessed the jury for the evening with instructions to continue deliberations the following morning. The jury reached a verdict the next day.

[T]here is . . . not even a zone of reasonable disagreement, but there is certainly something . . . to defense counsel's . . . assertion that his strategy was based on surprise. Not to mention the fact that there is nothing in the record to indicate that any witness changed their story or testified inconsistently or now would change their story or their testimony because of some investigation that he would have done.

It appears from the record that Mr. Salvant was familiar with the totality of the legal and factual circumstances, the facts of the case, reviewed documents provided by the State . . . He was capable of making an informed and rational decision. He created a trial strategy, tried to discuss that with his client, although it doesn't appear that his client was particularly willing to listen . . . to what he had to say.

And again, I find nothing where any witness that testified in the trial or in this hearing would have changed their testimony or that . . . any investigation – additional investigation done by defense counsel would have changed any result or resulted in an acquittal.

And . . . based upon the defendant's testimony, it appeared there was some lack of communication between the defendant and trial counsel, but I can't find that anything in – as far as any lack of communication between those two was not the result of defendant's being uncommunicative in pretrial preparation with Mr. Salvant.

Additionally to that, there is nothing to show in the record that had there been any more communication between the defendant and trial counsel, that that would have resulted in a different outcome of this trial.

So, on that basis, I'll deny your motion for new trial.

### **Motion for New Trial: Standard of Review**

We review a trial court's denial of a motion for new trial alleging ineffective assistance of trial counsel under an abuse of discretion standard. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012) *overruled on other grounds Miller v. State,* 548 S.W.3d 497, 498, 502 (Tex. Crim. App. 2018)); *see also Zarate v. State*, 551 S.W.3d 261, 272 (Tex. App.—San Antonio 2018, pet. ref'd). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Okonkwo,* 398 S.W.3d at 694. We review the evidence in the light most favorable to the trial court's ruling and reverse only if the trial court's denial of that motion was clearly erroneous

and arbitrary. *Id.* We do not substitute our own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Riley*, 378 S.W.3d at 457.

The trial court, as factfinder, is the sole judge of witness credibility at a hearing on a motion for new trial. *Okonkwo,* 398 S.W.3d at 694. Accordingly, we must afford almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.*

### Ineffective Assistance of Counsel

A defendant in a criminal case has a Sixth Amendment right to effective assistance of counsel. U.S. CONST. amends. VI and XIV. It is the function of effective trial counsel "to make the adversarial testing process work in the particular case." *Strickland v. Washington,* 466 U.S. 668, 690 (1984); *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). The same two–prong *Strickland* standard of review for ineffective assistance of counsel claims is applied in both the guilt-innocence phase of trial and the punishment phase of trial. *See Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999).

In order to establish ineffective assistance of trial counsel, an appellant must prove that (1) trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687–89; *Hernandez v. State*, 726 S.W.2d 53, 54–57 (Tex. Crim. App. 1986). The prejudice prong requires a showing that, but for counsel's errors, there was a reasonable probability that the result of the proceedings would have been different. *Hernandez*, 726 S.W.2d at 55. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* If the alleged deficient performance might have affected a punishment verdict, the prejudice issue is whether there is a reasonable probability that, absent the errors, the sentencer

would have assessed a more lenient punishment. *Strickland,* 466 U.S. at 695; *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018).

Both the "performance" and "prejudice" prongs of the inquiry are mixed questions of law and fact, but the prejudice prong often turns upon the credibility and demeanor of witnesses. *Riley*, 378 S.W.3d at 458. As with a trial court's ruling on a motion for new trial, we grant "almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Id.*

## Motion for New Trial Analysis

### *Deficient Performance*

There is a strong presumption that the conduct of counsel was not deficient. *Strickland,* 466 U.S. at 689; *Nava v. State,* 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013). To establish deficient performance, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689. We "commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State,* 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). We judge the reasonableness of trial counsel's challenged conduct on the facts of the particular case and view it as of the time of the conduct, not in hindsight. *Strickland,* 466 U.S. at 690; *Andrews,* 159 S.W.3d at 101. We look to the totality of the representation, not isolated instances of counsel's performance, to determine whether counsel provided effective assistance. *Moore v. State,* 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); *Melton v. State,* 987 S.W.2d 72, 76 (Tex. App.—Dallas 1998, no pet.). Appellant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Moore*, 694 S.W.2d at 531; *Melton*, 987 S.W.2d at 76.

The trial court found that Salvant tried to discuss the case with appellant but "it doesn't appear that [appellant] was particularly willing to listen." This constitutes a finding of historical fact to which we defer. *See Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.)(stating that when a defendant asserts ineffective assistance of counsel in a motion for new trial the reviewing court gives deference to the trial court's implied resolution of "underlying factual determinations").

As noted above, during a hearing on a motion for new trial, witness credibility is determined by the trial court. *Okonkwo,* 398 S.W.3d at 694. Here, the trial court heard conflicting testimony from Salvant and appellant concerning whether appellant wanted to testify and whether Salvant properly prepared him to testify, particularly for the State's cross–examination on appellant's criminal history. It is clear from this record that the trial court impliedly believed Salvant's testimony over that of appellant's. This is a credibility determination to which we defer. *Id*.

Appellant relies on *Perrero v. State*, 990 S.W.2d 896 (Tex. App.—El Paso 1999, pet. ref'd) to support his argument that failing to adequately prepare a defendant to testify without knowing that he could open the door to his prior criminal history falls below the reasonable standard of care "for any competent defense attorney." In *Perrero,* there was evidence that the defendant's trial counsel was unaware that if the defendant testified he could be impeached by his prior criminal record. *Id*. at 899. Indeed, Perrero's trial attorney testified at the hearing on the motion for new trial that he was negligent, made a big mistake, and completely overlooked preparation of the defendant to testify in a manner that would not open the door to criminal history. *Id*. There is no such evidence in this case. To the contrary, Salvant testified repeatedly that he warned appellant about the dangers of testifying because of his prior criminal history and other extraneous acts the

State would be able to cross–examine him about. Salvant repeatedly advised appellant not to testify. Unlike the attorney in *Perrero*, Salvant did not "fall on his sword."

The right to testify is personal to a criminal defendant. *Johnson v. State,* 169 S.W.3d 223, 232, 235 (Tex. Crim. App. 2005) (citing *Rock v. Arkansas,* 483 U.S. 44, 52 (1987)). The defendant possesses the ultimate authority to decide whether to invoke the right. *Id.* at 236. In this case, appellant chose to invoke his right to testify at the punishment phase of the trial and did so against the advice of his trial counsel. The fact that appellant is disappointed in the outcome of the trial, *i.e.*, the punishment assessed, does not result in ineffective assistance of counsel at trial. Deficient performance of trial counsel is not established.

***Prejudice***

Even if we agreed that Salvant's performance was deficient we conclude that appellant had not satisfied the prejudice prong of the *Strickland* test.

The record does not establish that the result of the trial would have been different had counsel given appellant additional preparation to testify. The trial court specifically found that there was nothing in the record to show that "any more communication" between Salvant and appellant would have resulted in a different outcome of the trial.

Additionally, the jury heard evidence of some of appellant's bad acts during the guilt-innocence phase of trial. During the punishment phase of trial, the jury heard evidence of additional crimes and bad acts. Nothing in the record demonstrates that any of these prior convictions were inadmissible. Moreover, despite appellant's criminal history, the jury did not assess the maximum available punishment.[5] Appellant has failed to establish there is a reasonable probability that the

---

[5] The offense of which appellant was convicted, assault family violence, is a third degree felony with an available punishment range of imprisonment for a term of years not less than two years nor more than ten years with an optional fine not to exceed $10,000.00. TEX. PENAL CODE ANN. § 12.34. Because the jury found that appellant had committed one prior felony offense, the available range of punishment was enhanced to that of a second degree felony, *i.e.*, a term of years not less than two years nor more than twenty years with an optional fine not to exceed $10,000.00. TEX.

–11–

result of the proceeding would have been different, *i.e.*, a lesser punishment assessed, but for Salvant's alleged deficient performance.

Because appellant failed to prove ineffective assistance by a preponderance of the evidence, the trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's sole issue.

## Conclusion

The trial court's judgment is affirmed.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

170821F.U05

---

PENAL CODE ANN. §§ 12.33, 12.42(a). The jury's punishment of fifteen years' imprisonment and no fine was five years less than the maximum available punishment.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GORDON C. BANE, Appellant

No. 05-17-00821-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 297th District Court, Tarrant County, Texas
Trial Court Cause No. 1464818D.
Opinion delivered by Justice Osborne.
Justices Schenck and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of May, 2019.