**Affirmed and Opinion filed August 11, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00226-CR

**KENNETH RAY HUMPHREY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1415329**

## O P I N I O N

Appellant Kenneth Humphrey was convicted by a jury of felony murder.[1] Appellant moved for a new trial, arguing ineffective assistance of counsel. After a hearing, the motion was denied by operation of law. Appellant challenges the denial on appeal. We affirm.

---

[1] Tex. Penal Code § 19.02(b)(3) (West 2015).

## Factual and Procedural Background

On the night of April 18, 2013, April Simmons, Marianela Riley, and appellant drove to Shipley's Do-Nuts to get something to eat. At the time, Simmons was pregnant with appellant's child. Outside the donut shop, appellant and Simmons began fighting. Appellant hit Simmons until she fell to the ground. As Simmons lay on the ground, appellant kicked her in the stomach. Riley attempted to intervene and yelled at appellant to stop. Appellant threatened Riley and told her to "back up." Appellant then instructed Riley to pick Simmons up and "put her in the car so he [could] take her down the road and kill her." Riley put Simmons in the back seat of the vehicle, and appellant began driving. Appellant eventually pulled into the parking lot of a Valero station in Pasadena. Appellant gave Riley money for gas and told her not to "act funny," otherwise she and her children would die. Riley witnessed appellant "t[a]k[e] a hammer to [Simmons's] head." Riley then got out of the car and walked into the station. Riley told the clerk inside, Andrew Ramirez, that she needed help because appellant was going to kill Simmons and take Riley with him. Ramirez called the police. Riley re-entered the vehicle on the passenger side; appellant remained outside the vehicle. Within minutes Officers S. Coulter and M. Phillips of the Pasadena Police Department arrived at the scene and approached appellant. The officers gave appellant verbal commands to "stop" and to put his hands up. Appellant jumped into the driver's side of the vehicle and drove away. Officers Coulter and Phillips got back into their cars and pursued appellant.

As the chase continued, Riley asked appellant to pull over and let her drive because he was driving erratically and at a high rate of speed. Riley told appellant that if he let Riley drive, he could run away. Appellant swerved past another car on the road and the vehicle flipped. After the wreck, the police approached the

2

vehicle and found appellant in the driver's area of the vehicle, lodged into the floorboard and the seat. The police found Riley on the center console of the vehicle with her legs pinned underneath the driver's side of the vehicle. The police found Simmons outside the vehicle. Appellant, Riley, and Simmons were transported to the hospital. When Simmons awoke at the hospital, she was told that her baby had died and that she needed to deliver it through her broken pelvis. The child, Baby Simmons, was stillborn. Sara Doyle, an assistant medical examiner for Harris County, performed an autopsy of the child and the placenta delivered with the child. Doyle concluded that the cause of the child's death was intrauterine fetal demise associated with maternal blunt trauma. No toxicology tests were ordered as part of the autopsy.

Appellant was charged with felony murder for the death of Baby Simmons. The indictment charged that appellant caused the death of Baby Simmons in the course of committing the felony offense of evading arrest in a motor vehicle.[2] A jury trial was held, and the jury found appellant guilty of felony murder. At the punishment phase, appellant pleaded "true" to both enhancement paragraphs presented. The State called four witnesses to testify at the punishment phase. Appellant called none. The jury assessed punishment at life in the Texas Department of Criminal Justice, Institutional Division. Appellant filed a motion for new trial, arguing that trial counsel was ineffective. The trial court held a hearing on the motion, at which trial counsel testified. There is no indication in the record that the motion was ruled upon within the 75 days allowed by the Rules of Appellate Procedure,[3] and both appellant and the State agree that the motion was

---

[2] Tex. Penal Code § 38.04(a), (b)(2)(A) (West 2015).

[3] "The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court." Tex. R. App. P. 21.8(a) (West 2015). "A motion not timely ruled on by written order will be deemed denied when the [75-day] period prescribed . . .

3

denied by operation of law. Appellant timely filed this appeal.

## Analysis

Appellant presents one issue: the trial court erred in denying appellant's motion for new trial because trial counsel was ineffective in failing to "investigate the law or facts of the case" and failing to "adequately prepare for either phase of trial." More specifically, appellant alleges that trial counsel was ineffective in: (1) failing to order toxicology testing on fetal tissue and failing to consult an expert on fetal demise to opine on the results of this testing; (2) failing to investigate and present evidence that Riley, and not appellant, was in the driver's seat at the time of the crash; (3) failing to present any evidence at the punishment phase of trial; and (4) failing to object to punishment testimony on the grounds that it violated the Confrontation Clause of the United States Constitution.

When, as here, an appellant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "We view the evidence in the light most favorable to the trial court's ruling, and we reverse only if no reasonable view of the record would support the trial court's finding." *Id.* To prevail on a claim of ineffective assistance of counsel, appellant must show that: (1) trial counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) counsel's deficient performance prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). An appellant's defense was prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine

expires." *Id.* 21.8(c).

4

confidence in the outcome." *Id.* We review *de novo* the trial court's decision on the prejudice prong of the *Strickland* test, "while giving deference to the trial court's implied resolution of underlying factual determinations." *Parker*, 462 S.W.3d at 562. "Because there are countless ways to render effective assistance, judicial scrutiny of trial counsel's conduct must be highly deferential." *Ex parte Rogers*, 269 S.W.3d 858, 862 (Tex. Crim. App. 2012) (internal citations omitted). "Given the difficulty in evaluating trial counsel's performance, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 100–01 (1955)).

We address each of appellant's specific allegations of ineffectiveness in turn and determine whether, in light of each, the trial court erred in denying appellant's motion for new trial.

## I. Counsel's alleged failure to investigate Baby Simmons's cause of death

Appellant contends that trial counsel was ineffective in failing to independently pursue the toxicology testing that was not performed as part of the autopsy on Baby Simmons. Appellant argues that a reasonable attorney would have further investigated Baby Simmons's cause of death by ordering the testing after viewing April Simmons's medical records, which indicated that she had methamphetamine in her blood when she arrived at the hospital. Appellate counsel ordered the toxicology testing and presented the results at the hearing on appellant's motion for new trial. The testing revealed that methamphetamine was present in the fetal tissue at the time of the autopsy. Appellant further argues that if trial counsel had uncovered the results of this toxicology testing, he then would have taken the reasonable step of consulting with and retaining an obstetric or fetal demise expert "to opine on the significance of the presence of methamphetamine and possible other drugs." Prior to the hearing, appellate counsel consulted with

Dr. Kelly Wilson, an obstetrician. Appellate counsel presented the trial court with an affidavit in which Wilson offered an alternative cause of death—intrauterine growth restriction (IUGR). Wilson believed that IUGR was indicated by Baby Simmons's small head and abdominal circumference relative to her estimated gestational age. Wilson also found several IUGR risk factors in April Simmons's medical records, including tobacco use, methamphetamine use, chronic hypertension that went untreated, obesity, and lack of prenatal care.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91. In an ineffectiveness case, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* Trial counsel also has a duty "to investigate the facts of the case and determine if an expert is necessary to present the defendant's case to the jury and, if so, to obtain competent expert assistance." *Ex parte Flores*, 387 S.W.3d 628, 635 (Tex. Crim. App. 2012).

At the hearing on appellant's motion for new trial, appellate counsel asked trial counsel why he had not pursued toxicology testing on Baby Simmons's body. Trial counsel responded that he reviewed the autopsy report and relevant medical records and concluded that Baby Simmons died from maternal blunt trauma and not from drug-related causes. Trial counsel also defended his choice to use cross-examination to cast doubt on Doyle's conclusion as to the cause of death, rather than retaining an expert to assist. Trial counsel testified that he did not believe that consulting with an expert would have been fruitful in light of what the autopsy revealed and that strategically it was more beneficial to cross-examine Doyle.

Counsel's decision to elicit testimony through cross-examination is presumed to be a strategic decision. *In re S.P.*, 9 S.W.3d 304, 307 (Tex. App.—

San Antonio 1999, no pet.). "Unless a defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel will generally not be found ineffective." *Flores*, 387 S.W.3d at 633. Proper trial strategy includes cross-examination with an intent to discredit witnesses by pointing out inconsistencies. *See Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). In his cross-examination, trial counsel confronted Doyle with the possibility that Baby Simmons could have died as a result of maternal drug use, specifically methamphetamine. Doyle confirmed that methamphetamine could have infiltrated the placenta and subsequently could have caused the death of Baby Simmons. Further, trial counsel elicited testimony from Doyle that she was not an expert in obstetrics, presumably to call into question Doyle's ability to reach a credible conclusion regarding the cause of the baby's death. We conclude that trial counsel's decision to use cross-examination to cast doubt on Doyle's conclusion that Baby Simmons died from maternal blunt trauma rather than retaining and calling an expert to do the same was strategic. *See Cantu v. Collins,* 967 F. 2d 1006, 1016 (5th Cir. 1992) (cross-examination of a witness may be constitutionally sufficient strategy even though retaining an expert may assist in development of a cross-examination strategy). Appellant has not overcome the presumption that trial counsel's decision was based in sound trial strategy.

Even assuming that trial counsel's decisions not to order toxicology testing and not to retain a fetal demise expert constitute deficient performance, appellant still has not demonstrated that he was prejudiced by this choice. The presentation of the toxicology report would have done little more than confirm what the jury already had heard—that Simmons used methamphetamine[4] and that Baby Simmons likely was affected negatively by that use. The jury chose to disregard

[4] Before Doyle took the stand, Simmons testified that she had a "fairly significant drug problem" during her pregnancy.

this testimony and instead presumably relied on the autopsy in concluding that Baby Simmons's death was a result of the car crash following the police chase appellant initiated. Likewise, Wilson's affidavit only serves to reinforce the alternative theory of fetal demise that trial counsel raised through cross-examination—Simmons's drug use and lack of prenatal care. In all reasonable probability, presenting evidence to the jury by way of an expert rather than through cross-examination would not have led to a different outcome.

**II. Counsel's alleged failure to investigate and present evidence that Riley was in the driver's seat at the time of the crash**

In his second allegation of ineffective assistance, appellant argues that trial counsel was deficient in failing to further investigate and present evidence of appellant and Riley's respective positions after the crash. Had trial counsel investigated more thoroughly, appellant argues, he would have found emergency medical reports that indicated that Riley was found in the driver's seat, which, in turn, could have been used to impeach Riley's testimony that she and appellant had not switched seats prior to the crash.

At the hearing on appellant's motion for new trial, appellate counsel presented two emergency medical reports—one marked "Riley, Marianela" and one marked "RILEY, NELLA." The report marked "Riley, Marianela" read, in relevant part, "Pt. 30 y/o h. female restraint driver of vehicle major damage all sides." The report marked "RILEY, NELLA" read, "PT WAS FOUND PINNED IN THE DRIVERS POSITION AND PINNED UNDER THE STEERING WHEEL." Appellant contends that these portions of the reports indicate that Riley was in the driver's seat at the time of the crash. Appellant argues that if trial counsel had confronted Riley with these reports at trial, he could have impeached Riley's credibility by showing that: (1) Riley lied about not switching seats with appellant; and (2) Riley testified in her own self-interest to avoid being prosecuted

8

as a party to the murder of Baby Simmons.

Failure to impeach could be part of a part of a reasonable strategy. *Davis v. State*, 276 S.W.2d 491, 502 (Tex. App.—Waco 2008, pet ref'd). "Strategic choices made after a thorough investigation of law and facts relevant to plausible options are . . . virtually unchallengeable." *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). "Strategic choices made after a less than complete investigation, however, are reasonable only to the extent that reasonable professional judgments support the limits on investigation." *Id.* (internal quotations omitted).

At the hearing, appellate counsel asked trial counsel why he did not pursue the emergency medical reports to impeach Riley with them. Trial counsel explained that he evaluated the evidence and found that it did not support the theory appellate counsel was proposing. Trial counsel said that he "didn't have any credible evidence to show" that Riley was driving the vehicle, and he reiterated that the police video from the chase did not show Riley driving. Trial counsel's testimony indicates that he conducted a thorough investigation of the evidence available and made a strategic decision not to pursue a line of questioning that was, in his judgment, not supported by the evidence.

Further, trial counsel's failure to present these emergency medical records would not have changed the outcome of the trial. Even assuming that the cryptic records conclusively showed that Riley was driving the vehicle when it crashed, and that the records could have been used at trial to discredit Riley's testimony that she was not driving the car, appellant's own culpability would remain unchanged. Testimony at trial indicated that when police confronted appellant in the Valero parking lot and ordered him to stop and put his hands up, appellant jumped into the driver's seat of the vehicle and drove away from the officers. Even if appellant

9

switched seats with Riley during the chase, the predicate felony of evading arrest already had been completed. The Penal Code requires only that the offender "flee[] from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." Tex. Penal Code § 38.04(a), (b)(2)(A) (West 2015). The statute does not require that the offender maintain control of his getaway car for any particular length of time to be found guilty of the offense. Demonstrating that appellant left the driver's seat at some point after appellant first evaded police provides no basis for acquittal.

## III. Failure to present mitigating evidence at the punishment phase

Appellant argues that trial counsel's failure to call any witnesses, to hire a mitigation expert, or to present any mitigation evidence at the punishment phase of trial constitutes ineffective assistance of counsel. Appellant contends that if trial counsel had adequately investigated appellant's past, he would have found that appellant suffered from various mental health issues and had experienced a difficult childhood. At the hearing on the motion for new trial, appellate counsel presented records kept during the time appellant spent in the Harris County Jail awaiting trial in this case. The records indicated that appellant previously had been diagnosed with bipolar disorder and had received inpatient psychiatric treatment. The records also indicated that appellant reported a history of loss, including the deaths of his brother, mother, and father. Appellate counsel also presented affidavit testimony from Kimberly Clark-Washington, a social worker employed by the Harris County Public Defender's Office. In the affidavit, Clark-Washington stated that she interviewed appellant post-conviction and that he reported the following: (1) that he previously was diagnosed with bipolar disorder and schizophrenia; (2) that his father, an alcoholic, severely abused him; (3) that his father was murdered by his father's second wife prior to the events at issue in this

10

case; and (4) that his brother was shot to death and that his mother died at his brother's funeral.

"*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 532 (2003). "Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Id.* A decision not to investigate and pursue a line of mitigating evidence "must be directly assessed for reasonableness in all circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 691). But, "counsel can only make a reasonable decision to forego presentation of mitigating evidence after evaluating available testimony and determining that it would not be helpful." *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

At the hearing on the motion for new trial, appellate counsel asked trial counsel if he ever had spoken to appellant about appellant's mental health. Trial counsel initially declined to answer, invoking attorney-client privilege. Appellate counsel asked again, and trial counsel responded that he had asked appellant about "his history" and "everything that would be germane . . . his prior convictions, his witnesses, and everything." Trial counsel testified that he did not order the jail records that appellate counsel presented at the hearing because appellant "was consistent from day one" regarding the information he provided to trial counsel. Trial counsel testified that he did not hire a mitigation expert or call any witnesses because he did not believe anyone would testify on appellant's behalf. Trial counsel also testified that appellant suggested his sister as a potential defense witness, but when trial counsel reached out, appellant's sister refused to cooperate. Even more problematic was that trial counsel discovered that appellant's sister had testified at a previous parole board hearing that appellant should not receive parole.

Trial counsel testified that appellant had not suggested any witnesses other than his sister. Further, trial counsel was aware that Simmons and Riley—both of whom were closely associated with appellant at that time—also would be unhelpful mitigation witnesses.[5]

It is not apparent from this record that trial counsel failed completely to investigate appellant's mental health history. Asserting his attorney-client privilege, trial counsel limited his explanation of his investigation to general statements indicating that he did speak with appellant about his mental health and other potentially mitigating factors. Appellant argues, relying on the *Milburn* case, that trial counsel should have consulted with one of the many forensic psychologists and psychiatrists in Houston at his disposal. *Id.* at 270. But trial counsel indicated at the hearing that his conversations with appellant led him to believe that he did not need to delve deeper into the issue of mental health. *Strickland* "require[s] attorneys to put forth enough investigative efforts to base their decision not to present a mitigating case on a thorough understanding of the available evidence." *Ex parte Woods*, 176 S.W.3d 224, 226 (Tex. Crim. App. 2005). This record does not demonstrate that trial counsel put forth an insufficient investigative effort or that he lacked a thorough understanding of the available evidence. Further, *Milburn* is distinguishable.

In *Milburn*, trial counsel failed to interview or call *any* witnesses during the punishment phase when there were twenty relatives and friends who had demonstrated their willingness to testify. *Milburn*, 15 S.W.3d at 269. Trial counsel's only explanation for failing to call these witnesses was that "in his

---

[5] At the hearing, trial counsel agreed with the State that it had "continue[d] open communications" with trial counsel regarding Simmons's and Riley's loyalty to appellant. Trial counsel testified that he was aware that the women's loyalty to appellant had changed in the course of proceedings.

experience[,] juries don't generally place much weight on the testimony of family members." *Id.* Here, in contrast, trial counsel interviewed potential witnesses—including appellant—and made a strategic decision not to present any testimony. Unlike the trial counsel in *Milburn*, trial counsel's explanation as to why he could not present testimony from appellant's family members—appellant's sister and Simmons, the mother of his stillborn child—did not consist of mere speculation as to how the jury would receive the testimony. Trial counsel was certain that these two women would not testify favorably, even if they did cooperate.

Further, trial counsel's closing statement at punishment indicated that his focus was on appellant's lack of intent to kill rather than any mental-health factors. Trial counsel stated five times during his jury argument that appellant did not intend to kill Baby Simmons. Prioritizing appellant's lack of intent to kill over the presentation of potentially hostile mitigation witnesses is a reasonable strategic decision. *See Wiggins*, 539 U.S. at 534 (focus on direct responsibility rather than a mitigation case at punishment may be "strategically defensible"). We conclude that trial counsel's decision not to order the jail mental health reports and counsel's decision not to present any mitigation witnesses at punishment did not fall below an objectively reasonable standard. Appellant's ineffectiveness claim fails on this ground.

## IV. Counsel's failure to object to testimony on Confrontation Clause grounds

At the punishment phase, the State presented testimony from Ayako Chan-Hosokawa, a forensic toxicologist. Chan-Hosokawa testified that analysts in the forensic lab tested a blood sample taken from appellant after the crash and found methamphetamine and amphetamine in the sample. Chan-Hosokawa did not personally perform the analysis, but rather reviewed the analysts' reports and authored a report of her own confirming the results of the test. Trial counsel cross-

examined Chan-Hosokawa about her role in the testing and her knowledge of the lab's procedures, but did not object to Chan-Hosokawa's testimony regarding her conclusions. Appellant argues that trial counsel was ineffective in failing to object to Chan-Hosokawa's testimony on Confrontation Clause grounds.

Appellant did not preserve any error stemming from trial counsel's failure to object. For an error to be preserved, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). Appellant's motion for new trial did not list failure to object to Chan-Hosokawa's testimony as one of the bases for appellant's ineffective assistance of counsel claim. Neither did appellant bring this complaint to the trial court's attention during the hearing on the motion. The error is not preserved and therefore provides no basis for relief.

## Conclusion

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial. We affirm the judgment of the trial court.


/s/     Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.
Publish — TEX. R. APP. P. 47.2(b).

14