**Affirmed and Memorandum Opinion filed December 13, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00668-CR

_____

**RICARDO LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1391842**

## M E M O R A N D U M   O P I N I O N

Appellant Ricardo Lopez was found guilty of aggravated sexual assault of a child under the age of 14. On appeal, appellant contends his trial lawyer's failure to object to testimony concerning recidivism and future dangerousness during the punishment phase constituted ineffective assistance of counsel. We affirm.

### BACKGROUND

A detailed discussion of the facts is unnecessary because appellant does not challenge the jury's finding of guilt. It suffices to say that appellant sexually

assaulted his 11-year-old stepdaughter, Jessica,[1] many times over the course of a week.

Lawrence Thompson, Jr., Ph.D., testified for the State during the punishment phase. Thompson is a clinical psychologist. At the time of trial, he had served for about 11 years as the director of therapy and psychological service at the Harris County Children's Assessment Center. He has counseled survivors of childhood sexual abuse for 15 years. Thompson has not counseled sex offenders, but he has "a fair amount" of training regarding sex offenders and has talked with sex offenders during visits to several treatment programs throughout the state. He did not meet appellant or Jessica.

The State questioned Thompson about treatment of sex offenders and their possibility of reoffending in the future:

> Q.    [I]s this like a disease or ailment that can be cured, this desire to have sex with children?
>
> A.    [W]e have no cure for sexual attraction to prepubescent children. To the extent that we have an adult that is sexually attracted to prepubescent children, clinically considered kids sort of 13 years of age or below, we have no cycle therapy, no cycle pharmacology, or medicine or anything that we can do to change that sexual attraction. The quote-unquote treatment focuses on . . . acknowledgment of the fact that that inappropriate sexual impulse will always be there and management of that impulse in a way that hopefully keeps the person in a place where they are not able to act on it.
>
> . . .
>
> Q.    Is there any treatment to ensure that this person will not reoffend in the future?
>
> A.    No, there is no treatment that can guarantee that.

---

[1] Jessica is a pseudonym. *See* Tex. R. App. P. 9.10(a)(3).

Q. . . . [H]ow is someone able to ensure that someone [is] not going to reoffend with someone who has this desire?

A. The only way to be certain the child is not going to be sexually abused is to have that person in prison.

Q. Now, and where — tell the jury, where is the best program for sex offenders located?

A. The best program I'm aware of is in the Texas Department of Criminal Justice. . . .

. . .

Q. Let me ask you this, Doctor: What are some of the dangers that the community is looking at if it's not treated?

A. Abuse of more children.

The trial judge called a bench conference to express her concern with the State's line of questioning:

Court        This is beginning to make me real nervous because it invites the jury to speculate about crimes he might be committing in the future.

Prosecutor   Yes, Your Honor.

Court        And that's kind of a gray area.

Prosecutor   Yes, Your Honor.

Court        So, you know, some of this is fine; but I urge you to be careful about something that — he has never even interviewed this defendant?

Prosecutor   No, Your Honor.

Court        So, I'm just telling you it's making me nervous. I would hate for this case to have to be retried.

Prosecutor   Yes, Your Honor.

The State passed the witness without asking Thompson any more questions.

Appellant's lawyer cross-examined Thompson about appellant himself being an untreated victim of sexual abuse. Counsel elicited testimony from Thompson that a victim of sexual abuse not properly treated might later commit sexual abuse.

Next, appellant's counsel asked Thompson about the risk and frequency of sexual assaults in the Texas Department of Criminal Justice. He explained to the trial court his purpose in questioning Thompson about sexual assaults in prison:

| | |
|---|---|
| Court | What three points are you trying to make with this? |
| Counsel | Well, the number of years he gets sentenced should not be looked at in a vacuum. I mean, he gets sentenced to that many years and the likelihood that many years he is going to be sexually assaulted based on the report [concerning sexual assaults in prison]. Also — |
| Court | Are you trying to establish there is a likelihood he will be sexually assaulted? |
| Counsel | That my client, yes, Your Honor. |
| Court | Okay. All right. Point 2? |
| Counsel | Point 2, that becomes relevant in connection with the therapy that he would get in the prison. So — |
| Court | How does that jive with the therapy he has discussed? |
| Counsel | Because that can impede the therapy. |
| Court | Okay. |
| Counsel | So, the longest [sic] he is in prison, the greater likelihood that his therapy will be hindered or impeded on. |
| Court | Okay. |

4

Counsel      And the third point in the report indicates that those are
             — the longest sentences are the ones that are most likely
             to become victims of sexual abuse in prison.

The trial court allowed appellant's counsel to pursue this line of questioning, stating, "If they are requesting to hear about all the wonderful treatment and therapy up there, they ought to hear about the bad stuff. It seems fair to me."

Appellant's counsel questioned Thompson extensively about the likelihood appellant would be sexually assaulted in prison and the effect of such an assault or assaults on appellant's sex-offender treatment. Thompson did not know the statistical likelihood but agreed an assault could impede appellant's treatment.

The State rested at the conclusion of Thompson's testimony. Appellant called no witnesses and rested as well. During closing argument, appellant's lawyer urged the jury to consider appellant's status as an untreated victim of sexual assault in deciding his sentence. The jury assessed punishment of 45 years' imprisonment.

## ANALYSIS

### I.      Law on ineffective assistance of counsel

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). Under *Strickland*, the defendant must prove (1) his trial counsel's representation was deficient, and (2) the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance deprives the defendant of a fair trial only if it prejudices the defense. *Id.* at 691–92. To show prejudice, appellant must demonstrate there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

5

different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). *See also Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (holding the two-pronged *Strickland* test applies to claims of ineffective assistance of counsel during non-capital sentencing proceedings).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In many cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be

6

established by isolating one portion of counsel's performance for examination. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *See Mata*, 226 S.W.3d at 430. Rather, to establish counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must demonstrate counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

## II.    Appellant has not shown ineffective assistance.

Appellant contends his lawyer provided ineffective assistance of counsel by failing to: (1) object to Thompson's testimony that appellant would pose a future danger if he is not in prison, and (2) insist on a *Daubert/Kelly* expert hearing on the issue of appellant's future dangerousness.

### A.    No objection was necessary because Thompson's testimony was admissible.

A lawyer's failure to object to evidence is not deficient performance if the evidence was admissible. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Failure to object to evidence is deficient performance only if the trial judge would have committed error in overruling the objection. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

Evidence of "any matter the court deems relevant to sentencing" is admissible in the punishment phase of a trial. Tex. Code Crim. Proc. Ann. art. 37.073 § 3(a)(1) (West 2013). "[T]he admissibility of evidence during 'the punishment phase of a non-capital trial is a function of policy rather than a question of logical relevance.'" *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006) (quoting *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App.

2002)). A bifurcated trial, in which the factfinder hears evidence regarding punishment only after the defendant has been found guilty, allows the factfinder to "take off the blindfolds" so as to make "an enlightened determination of punishment." *Davis v. State*, 968 S.W.3d 372 (Tex. Crim. App. 1998).

Thompson testified there is no cure or treatment for sexual attraction to prepubescent children. He said the only way to ensure a child victim will not be sexually assaulted again by a person is for that person to be in prison. The First Court of Appeals considered nearly identical testimony by Thompson in *Cavitt v. State*, No. 01-13-00900-CR, __ S.W.3d __, 2015 WL 1869499, *14 (Tex. App.— Houston [1st Dist.] 2015, pet. ref'd). Like appellant, Cavitt was found guilty of sexually assaulting a child. Thompson made the following statement during the punishment phase: "[T]o the extent that there is an inappropriate sexual attraction to children, that inappropriate sexual attraction is there and is an issue in an ongoing way." Thompson also said the likelihood of reoffending depends on the perpetrator, but the attraction cannot be cured. *Id.* at 14. On appeal, Cavitt asserted his trial lawyer was deficient in failing to object to Thompson's testimony. *See id.* at 15. The court of appeals held Cavitt did not establish the trial court would have erred in overruling an objection to the testimony. *See id.*

Despite the holding in *Cavitt*, appellant alleges his lawyer should have objected to Thompson's testimony, which he characterizes as inadmissible evidence of future dangerousness. In 1983, the Court of Criminal Appeals held that evidence of future dangerousness "does not come within the gambit of permissible testimony at the punishment stage of a non-capital case." *Reed v. State*, 644 S.W.2d 479, 481 (Tex. Crim. App. 1983), *superseded on other grounds*, Tex. R. Evid. 702. *Reed* relied on a previous version of article 37.07(3)(a) of the Code of Criminal Procedure, which stated in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character.

*Id.* at 481 n.1 (quoting Tex. Code Crim. Proc. Ann. art. 37.07(3)(a) (West 1981)). Article 37.07 was amended several times before appellant was tried. When appellant was sentenced, article 37.07 provided in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant **as to any matter the court deems relevant to sentencing**, **including but not limited to** the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West 2013) (boldface added).

"The seminal rule of statutory construction is to presume that the legislature meant what it said." *State v. Vasilas*, 187 S.W.3d 486, 488 (Tex. Crim. App. 2006). We begin with the plain language of a statute in order to discern its meaning. *Id.* Two principles of statutory construction compel us to conclude that article 37.07 does not prohibit evidence of the possibility of future assaults by a sex offender.

First, the list of permissible evidence in section 3(a)(1) is not exhaustive. "'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and the use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann. § 311.005(13) (West 2013). The addition of "including" in section 3(a)(1) "clarif[ies] that the

article's list of admissible evidence [is] *not* exhaustive and other evidence is admissible so long as it is deemed relevant to sentencing." *Grunsfeld v. State*, 843 S.W.2d 521, 524 (Tex. Crim. App. 1992) (italics in original), *superseded on other grounds*, Tex. Code Crim. Proc. Ann. art. 37.07 (West 1994).

The First Court of Appeals reached the same conclusion in *Peters v. State*, 31 S.W.3d 704 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The court considered the admissibility of evidence of future non-dangerousness, specifically evidence of incest-offender recidivism rates, which the defendant offered to establish he was suitable for probation. *See id.* at 707–08. The court concluded that "nothing in article 37.07, section 3(a) makes [such evidence] inadmissible per se." *Id.* at 717. *See also Sanchez v. State*, No. 01-14-00809-CR, 2015 WL 7455782, *7 (Tex. App.—Houston [1st Dist.] Nov. 24, 2015, no pet.) (mem. op.) (not designated for publication) (noting expert testimony on issues such as recidivism is "admissible as a proper consideration for sentencing under article 37.07").

Second, another part of article 37.07 expressly prohibits evidence of future dangerousness based on certain facts, namely a defendant's race or ethnicity:

> Notwithstanding Subdivision (1), evidence may not be offered by the state to establish that the race or ethnicity of the defendant makes it likely that the defendant will engage in future criminal conduct

Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(2) (West 2006). The express mention of one thing is tantamount to an exclusion of all others. *State v. Sutton*, PD-1051-15, __ S.W.3d __, 2016 WL 4793141, *2 (Tex. Crim. App. Sept. 14, 2016). Accordingly, subsection (a)(2)'s inclusion of certain facts (race and ethnicity) as a basis for prohibition of evidence of future dangerousness is tantamount to an exclusion of all other facts (including status as a sex offender) as a basis for prohibition of evidence of future dangerousness.

10

Appellant has not shown the trial court would have erred in overruling an objection to Thompson's testimony. Therefore, his lawyer's lack of objection to that testimony does not constitute ineffective assistance of counsel. *Ortiz*, 93 S.W.3d at 93; *White*, 160 S.W.3d at 53.

**B.    The record is silent on counsel's decision not to challenge Thompson as an expert.**

Appellant contends his lawyer should have challenged Thompson's qualification to testify about sex offenders because Thompson treats only child victims of sexual assault, not perpetrators. We assume for the sake of argument that the trial court would have sustained a challenge to Thompson's qualifications.

A lawyer may handle unfavorable expert testimony in several ways. He may raise a *Daubert*/*Kelly* challenge to the expert's qualifications or the reliability of the expert's conclusions and move to exclude the testimony. *See* Tex. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 923 U.S. 549 (1995); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). He may offer an expert of his own to refute the testimony. *See Humphrey v. State*, No. 14-15-00226-CR, __ S.W.3d __, 2016 WL 4253981, *3 (Tex. App.—Houston [14th Dist.] Aug. 11, 2016, pet. filed). Or, he may seek to demonstrate the flaws in the expert's testimony through cross-examination. *See id.*; *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.).

Appellant's lawyer cross-examined Thompson extensively about the likelihood appellant would be sexually assaulted in prison. Counsel attempted to admit several documents on the likelihood that a prisoner would be sexually assaulted in prison. During closing argument, counsel relied on Thompson's testimony regarding sexual assaults involving prisoners. Ultimately, appellant's lawyer urged the jurors to decide that "if [appellant] is sentenced to too long a

term, we could have somebody who is successfully treated, who completes, achieves the goals of a treatment provider at TDC who could then be victimized again in the system." The record is silent on why counsel elected to cross-examine Thompson rather than seek to exclude his testimony or call another expert to rebut Thompson's testimony. However, counsel's reliance on Thompson's testimony as a basis to convince the jury to reject a substantial prison term is a strategy readily apparent from this record.

We may not view counsel's conduct or strategy through the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Rather, appellant must overcome the "strong presumption" that counsel's conduct falls "within the wide range of reasonable professional assistance." On this silent record, we must presume appellant's lawyer made a sound strategic decision. *See Jackson*, 877 S.W.2d at 771. Appellant has not satisfied his burden to show his lawyer's decision not to challenge Thompson as an expert was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

Because appellant has not established his lawyer's performance was deficient, we do not reach the question of whether the performance prejudiced appellant's defense.

## CONCLUSION

We overrule appellant's issue and affirm the judgment of the trial court.

/s/     Ken Wise
         Justice

Panel consists of Justices Jamison, McCally, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

12