

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00017-CR

Tyler Andrew **MONTOYA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR6897
Honorable Lisa Jarrett, Judge Presiding

Opinion by:  Lori Massey Brissette, Justice

Sitting:  Irene Rios, Justice
Lori Massey Brissette, Justice
Adrian A. Spears II, Justice

Delivered and Filed: April 15, 2026

AFFIRMED

In this appeal, Appellant Tyler Andrew Montoya challenges the admission into evidence a video recording of his interrogation and the denial of his motion for new trial based on ineffective assistance of counsel. Based on the law and the record, we affirm.

### BACKGROUND

On or about May 1, 2019, Montoya was indicted for aggravated sexual assault of a child (registered as a sex offender) (count I) and indecency with a child (sexual contact) (count II) on

August 10, 2023. *See* TEX. PEN. CODE §§ 21.11(d); 22.021(A)(1)(B). A jury found Montoya guilty on both counts, and the trial court then sentenced him to two concurrent twenty-five-year terms, with the Texas Department of Criminal Justice Institutional Division, and two $1,000 fines. Montoya filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

MIRANDA WARNINGS AND CUSTODIAL INTERROGATION

Montoya contends the trial court should have excluded his video-recorded interview statements at police headquarters because he was subject to custodial interrogation without being informed of his rights pursuant to *Miranda* and Texas Code of Criminal Procedure Article 38.22.[1] Specifically, he asserts that he was subject to a custodial interrogation because he was the lone suspect and his arrest was inevitable when he was being questioned. We disagree.

**A. Standard of Review**

We review the trial court's ruling for an abuse of discretion and reverse it only if it is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). We give almost total deference to a trial court's assessment of the factual circumstances and review the ultimate legal determination of whether the person was subject to custodial interrogation de novo. *Id.* If the trial court does not enter findings of fact, as is the case here, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact supporting its ruling that are supported by the record. *Id.* As the prevailing party, the State is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *Id.*

---

[1] The State does not dispute that Montoya was not read his rights under *Miranda.*

### B. Applicable Law

*Miranda* generally prohibits the admission into evidence of statements made in response to custodial interrogation when the suspect has not been advised (1) they have the right to remain silent, (2) statements made by them may be used against them, (3) they have the right to have an attorney present prior to and during questioning, and (4) if they are unable to hire an attorney, they have the right to have one appointed. *See, e.g.*, *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *State v. Cruz*, 461 S.W.3d 531, 536 (Tex. Crim. App. 2015); *see also* TEX. CODE CRIM. PROC. art. 38.22 § 2(a) (further providing suspect must also be warned they have right to terminate interview at any time). But, these warnings are required only when there is a custodial interrogation.[2] *See* TEX. CODE CRIM. PROC. §§ 3 & 5 (providing nothing in article 38.22 precludes admission of statement that does not stem from custodial interrogation); *Wexler*, 625 S.W.3d at 167. In other words, a person must be both in custody and subject to interrogation. *Luckenbach*, 722 S.W.3d at 263.

Here, the issue raised by Montoya is whether, when he was being interrogated,[3] he was in the custody of law enforcement. To make a custody determination we consider whether the circumstances surrounding the interrogation demonstrate that a reasonable person being interrogated would have believed their freedom of movement was restricted to the degree associated with a formal arrest.[4] *Wexler*, 625 S.W.3d at 167. Four general situations may constitute

---

[2] Custodial interrogation under *Miranda* is the same under article 38.22. *See, e.g.*, *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 677 n.27 (Tex. Crim. App. 2009); *Luckenbach v. State*, 722 S.W.3d 250, 263 (Tex. App.—Austin 2025, pet. ref'd).

[3] The State does not dispute that Montoya was interrogated. *See* TEX. R. APP. P. 47.1; *State v. Cruz*, 461 S.W.3d 531, 536–37 (Tex. Crim. App. 2015) (providing in *Miranda* context, interrogation means words or actions on the part of police that police should know reasonably likely to elicit incriminating response, and should know focuses primarily upon perceptions of suspect, rather than intent of police).

[4] The "reasonable person" standard presumes an innocent person. *Wexler*, 625 S.W.3d at 167.

custody: (1) if an individual is physically deprived of their freedom of action in any significant way, (2) if a law enforcement officer tells the individual they are not free to leave, (3) if the officer creates a situation that would lead a reasonable person in the individual's shoes to believe their freedom of movement has been significantly restricted, or (4) if there is probable cause to arrest the individual and the officer does not tell them they are free to leave. *Id.* at 167–68. *See generally Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996). Montoya's argument centers on the fourth of the above scenarios.

To show he was in custody under that scenario, Montoya was required to demonstrate that law enforcement's belief of probable cause was communicated or in some way manifested to him and that other circumstances, combined with such manifestation, would lead a reasonable person to believe they were restrained to a degree associated with an arrest. *See Wexler*, 625 S.W.3d at 168; *Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009); *Barnes v. State*, 665 S.W.3d 192, 199 (Tex. App.—Eastland 2023, no pet.); *Cedillos v. State*, 250 S.W.3d 145, 152 (Tex. App.—Eastland 2008, no pet.). Further, he bore the initial burden to make this demonstration on the record. *Wexler*, 625 S.W.3d at 168.

## C. Analysis

As an initial matter, other than a brief objection to the video, Montoya did nothing to carry his burden to establish his statements were a product of custodial interrogation. *See Wexler*, 625 S.W.3d at 168. Even if he had attempted to do so, the video demonstrates he was plainly not in custody. Sergeant Bryan Biggler testified he interviewed Montoya at police headquarters after Montoya agreed to come speak with him. The video shows Montoya voluntarily entered the interview room. Sergeant Biggler reminded Montoya he was there voluntarily, he did not have to speak with him if he did not want to, he could terminate their conversation at any time, and, if he

did, he would escort Montoya and his mom out of police headquarters. During the interview, Sergeant Biggler informed Montoya that he investigated crimes of a sexual nature and that Doe had made an outcry that there was sexual contact between her and Montoya when she was younger, including multiple occasions of oral sex. Montoya denied the allegations and stated he had not seen Doe in more than three years. Sergeant Biggler asked him why Doe would accuse him of such conduct and Montoya said he did not know. Sergeant Biggler then walked Montoya out of the room.

The video does establish that Sergeant Biggler communicated his knowledge of probable cause to Montoya. *See Wexler*, 625 S.W.3d at 168. But this is not enough to establish the fact that he was in custody during the interrogation. *See Wexler*, 625 S.W.3d at 168; *Gardner*, 306 S.W.3d at 293; *Barnes*, 665 S.W.3d at 199; *Cedillos*, 250 S.W.3d at 152. The record demonstrates that Montoya made the decision to go to police headquarters of his own free will and to sit for a short, half-hour interview. Sergeant Biggler told him before he asked him any questions that he could end the conversation at any time. And, for the duration of the approximately thirty-three-minute interview, Sergeant Biggler sat at a table across from Montoya and maintained a friendly demeanor, without other officers present. Montoya was never placed in handcuffs, his movement was not restrained in any way, he was never blocked from exiting the interview room, and he left when Sergeant Biggler was done questioning him. Finally, he left without a single admission of guilt. There is simply nothing in the record that suggests a reasonable person would believe they were restrained to a degree associated with an arrest. *See Wexler*, 625 S.W.3d at 168.

Accordingly, based on the record before us, we overrule this issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Montoya contends the trial court should have granted his motion for new trial because his trial counsel was ineffective when he failed to present to the jury potentially exculpatory statements made by the victim, namely statements which suggest Doe failed to identify Montoya as her assailant. Montoya further contends that counsel admitted as much during the motion for new trial, and that this failure constituted prejudice. We disagree.

### A. Standard of Review and Applicable Law

When, as here, an appellant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Humphrey v. State*, 501 S.W.3d 656, 659 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In reviewing the trial court's ruling, we view the evidence in the light most favorable to the ruling, and we reverse only if no reasonable view of the record would support the trial court's ruling. *Humphrey*, 501 S.W.3d at 659.

We review ineffective assistance of counsel claims under the well-established standard set forth in *Strickland v. Washington.* 466 U.S. 668 (1984). Such Sixth Amendment claims involve determining: (1) whether counsel's actions were deficient, and (2) whether the defendant suffered prejudice as a result of counsel's actions. *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687). Montoya's failure to demonstrate either prong is fatal to his claim. *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023).

First, in order to demonstrate counsel's actions were deficient, Montoya must show, by a preponderance of the evidence, that his counsel's acts or omissions "fell below an objective standard of reasonableness" and cannot be considered "sound trial strategy." *Hart*, 667 S.W.3d at

781–82 (*quoting Strickland*, 466 U.S. at 689). In reviewing trial counsel's decisions, we do so in light of all circumstances, looking objectively and not through the benefit of hindsight. *See id.* at 782.

Second, assuming he can meet the first requirement, Montoya must demonstrate prejudice by showing there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland.* 466 U.S. at 687) (internal quotation marks omitted). We review the trial court's decision on prejudice de novo while deferring to the trial court's resolution of underlying factual determinations. *See, e.g.*, *Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

## B.  Analysis

The facts surrounding this claim are extraordinary. During the motion for new trial hearing, counsel alleged *his own* ineffective assistance. He contended he was ineffective because Cindy Brown—the licensed master level social worker who conducted a psychosocial assessment of Doe—noted as a part of her assessment and progress notes that Doe initially denied any sexual abuse and later reported she was abused by one of the older kids in the home, not Montoya. He noted that Doe's mother named him as the abuser. And there was nothing in the record that named Montoya until Doe testified three or four years after the outcry. He further contended his "error" in not raising or emphasizing these matters could have "changed everything," arguing no rational person armed with that information would have found Montoya guilty.

But here, there is no reasonable probability that, but for counsel's unprofessional errors, Montoya would not have been found guilty because all of this evidence *was* presented and

emphasized to the jury, and the jury still found Montoya guilty. *See Smith*, 286 S.W.3d at 340. The psychosocial assessment in question was admitted into evidence at trial. Montoya's counsel specifically questioned Brown about her assessment and, in so doing, secured her testimony that Doe initially denied any abuse. He emphasized this during closing. Brown further testified that once Doe made her outcry, she—with Doe's permission—informed Doe's mother, who was the one who provided SAPD with the "perpetrator's" name and contact information. Montoya's counsel also emphasized this point in closing, arguing that this showed Doe's mother, not Doe, named Montoya as the "perpetrator" and that Brown had manufactured the allegations against Montoya and put them in the mind of Doe and her mother. Finally, Brown testified that it was not uncommon for family members, i.e., not Montoya, to be the one who committed the sexual assault, yet another point emphasized by Montoya's counsel in closing when he pointed to evidence that Doe's brothers may have been the perpetrators.[5]

On this record, along with the fact that Doe testified during trial that Montoya was her abuser, Montoya cannot demonstrate that he was prejudiced by any ineffective assistance of counsel. Accordingly, we reject his claim for ineffective assistance of counsel, we cannot conclude the trial court abused its discretion by denying his motion for new trial. *See Humphrey*, 501 S.W.3d at 659; *Parker*, 462 S.W.3d at 562.

## CONCLUSION

Accordingly, the trial court's judgment is affirmed.

Lori Massey Brissette, Justice

DO NOT PUBLISH

---

[5] Montoya's counsel never asked if Doe specifically named Montoya. This was sound defense strategy because if Brown had testified Doe had specifically implicated Montoya, Montoya would not have been able to cast doubt on Brown's testimony.