Opinion issued May 29, 2025



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-23-00895-CR

—————————————

**RUBEN VILLARREAL PADILLA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 179th District Court
Harris County, Texas
Trial Court Case No. 1759348

---

## MEMORANDUM OPINION

A jury convicted Ruben Villarreal Padilla of assault of a family member, a third-degree felony. After finding one enhancement true, the trial court sentenced him to fourteen years' imprisonment. Padilla filed a motion for new trial alleging, among other things, ineffective assistance of counsel.

In a single issue, Padilla argues the trial court abused its discretion in denying his motion for new trial because he received ineffective assistance of counsel during plea negotiations. Padilla argues that "trial counsel denied [his] right to accept a favorable 2-year plea bargain by rejecting [the plea] before presenting it to [him] for consideration."

We affirm.

## Background

Padilla was indicted for assault of a family or household member in connection with an alleged assault on Esmerelda Serna, a woman Padilla dated from August or September of 2020 through February 17, 2022, the date of the alleged assault. The State offered Padilla a plea bargain of two years' prison time and, sometime later, it extended Padilla a plea bargain of three years' imprisonment. The circumstances surrounding the rejection of the first plea bargain remain unclear, but it is undisputed that Padilla rejected the second plea bargain offer. He pleaded not guilty and elected to go to trial.

Padilla was represented by retained counsel during the plea-bargaining proceedings and at trial. Padilla testified during trial that Serna began the altercation that led to his arrest by striking him first. Padilla's counsel argued to the jury that Padilla had struck Serna in self-defense. The jury convicted Padilla of

assault of a family/household member with a prior conviction,[1] which with an enhancement, carries a sentence of two to twenty years. *See* TEX. PENAL CODE §§ 22.01(b)(2), 12.42(a), 12.33.[2] The State asked the trial court to sentence Padilla to sixteen years. The trial court sentenced him to fourteen years in prison.

## Motion for New Trial

Padilla filed a motion for new trial arguing that "significant and compelling exculpatory and impeachment evidence was not presented at trial" and "trial counsel provided ineffective assistance of counsel" by failing to pursue and use certain exculpatory evidence and by failing to accept the State's two-year plea bargain.[3] Padilla argued in his motion for new trial that:

---

[1] The jury heard during the guilt-innocence phase that Padilla had previous convictions for possession with intent to deliver cocaine, assault on a family member by impeding breath, and aggravated assault of a family member. Padilla testified during the sentencing phase about two of his convictions for assaulting women he previously dated.

[2] Assault Family Violence with a Prior Conviction is a third-degree felony. TEX. PENAL CODE § 22.01(b)(2). Section 12.42 of the Penal Code provides that "if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony . . . on conviction the defendant shall be punished for a felony of the second degree." *Id.* § 12.42(a). The punishment range for conviction of a second-degree felony is two to twenty years' imprisonment and a fine up to $10,000. *Id.* § 12.33.

[3] Padilla's ineffective assistance argument in his motion for new trial involve two components. He alleged that (1) trial counsel had not used evidence that Serna allegedly stalked and threatened violence against Padilla, and (2) trial counsel gave "erroneous and unprofessional advice" that resulted in Padilla's rejection of a two-year plea offer. Padilla's sole issue on appeal concerns his ineffective assistance of counsel argument concerning the plea-bargaining process. He does

3

Trial counsel erroneously informed [him] that the State "didn't have shit." [Counsel] improperly informed [him] that there was no way he would go to prison, and that the worst case scenario was county jail time. [Padilla] turned down the two year offer that the State presented in this case based wholly on trial counsel's erroneous and unprofessional advice. [Padilla] would have taken the two year offer but for his counsel's advice.

(Internal citation omitted.) Padilla also argued that the State

repeatedly made low single digit plea bargain offers to [Padilla]. [Padilla] was made to reject those plea bargain offers in front of the Court. Thus, the State had not withdrawn those offers, and it is clear the Court would have accepted them.

Furthermore, trial counsel initially rejected the two year plea bargain offer without even discussing it with his client first. This is clearly ineffective assistance of counsel. *Ex parte Lemke*, 13 S.W.3d 791 (Tex. Crim. App. 2000) (failure to inform client of plea offer is ineffective assistance.)

Even worse, the advice trial counsel was giving was hopelessly confused. He was at the last minute urging his client to take the plea bargain offer, while simultaneously saying that the State "don't have shit." How is a client to interpret that?

Padilla attached a sworn statement to his motion for new trial stating:

[Trial counsel] gave me the worst possible advice. Up until the night before trial, he insisted the State did not have a case against me. When I told him I wanted to take the two year offer, he talked me out of it, and told me that there was no way I would go to prison in this case.[4] He claimed the worst I was looking at was a few days in the

---

not re-urge on appeal the first argument in his motion for new trial concerning evidence involving Serna. We thus do not address that argument on appeal.

[4] Padilla's statement in his affidavit that he wanted to take the two-year offer, but his trial counsel talked him out of it contradicts his motion for new trial, where he states that his trial counsel "initially rejected the two-year plea bargain offer without even discussing it with [him] first." It also contradicts the statement in

4

county jail. Based on his representations, and against my own better judgment, I allowed him to set the case for trial instead of taking the two year offer. I trusted his judgment, but I now know that he was telling me the State had no case against me without ever looking at the evidence. I would most likely already be done with the sentence in this case if not for his faulty advice and failure to investigate. If not for his faulty advice I would have taken the two-year offer.

(Footnote added.) Padilla averred that his trial counsel "repeatedly assured [him] that [he] shouldn't take the 2 years that had been offered, that there was no case against [him], and [he] should not plead guilty."

Padilla also attached to his motion for new trial the sworn statement of Cassandra Michele Garcia, a friend and relative of Padilla. Garcia testified in her sworn statement that she met with Padilla and his counsel "several times," and that counsel told them the assault charge would either be dismissed or "worst-case scenario [Padilla] will do a couple days in the County Jail." According to Garcia, in February 2023, the State offered Padilla a forty-year sentence, and counsel did not realize Padilla was not eligible for that sentence because he was not a habitual offender. "After clearing up that misunderstanding [counsel] completely caught us off guard again by informing Mr. Padilla [that] the state offered a plea deal for 2 years after he brought the error to their attention." According to Garcia, counsel told Padilla, "[W]e were offered a 2[-] year TDC plea deal, I of course turned it

Padilla's appellate reply brief that "[o]nly the three-year offer was presented to [him]" and the statement in his opening brief that his trial counsel "rejected a favorable two-year plea bargain offer without any effort to first consult his client."

5

down, because we are not accepting any prison time." She alleged that Padilla was "taken by surprise" about counsel's turning down the two-year offer and asked, "[A]re you sure we shouldn't just accept the offer? [] I can do that standing on my head[.]" According to Garcia, counsel told Padilla, "Well that is that your call, but I thought you said you didn't want to have to do any prison time if possible?" She averred that Padilla responses, "[W]ell of course if you are confident, I will receive a dismissal or lessor charge for county time?" And counsel responded, "[W]ell that's what we discussed multiple times but legally I have to notify you of the offer." According to Garcia, counsel "continued to reassure us everything was fine and there was no need to worry . . . we were never going to actually going to trial." Padilla and Garcia were "under the impression there would never be a trial."

In her statement, Garcia stated that in September 2023, counsel told Padilla that Serna "decided to move forward with the trial. He stated [Serna] was annoyed by the [inconvenience] and wanted to know why Mr. Padilla wouldn't just take the plea." Two days later, Garcia alleged that counsel contacted her "to insist [she] talk Mr. Padilla into taking the plea because he had no chance in court." She continued:

> Mr. Padilla referred back to the last court date when he was initially
> offered 6 years than imm[e]diately after offered 3 years. Mr. Padilla
> did consult with [counsel] if he thought this would be the best option
> for his situation. [Counsel] proceeded to wink his eye at Mr. Padilla

6

and assured him "they don[']t have shit!" . . . [Counsel] was both urging Mr. Padilla to take the plea deal, while continuing to state that the prosecution didn't have a case."

In response to the motion for new trial, the trial court ordered Padilla's trial counsel to file an affidavit responding to thirteen questions "to assist the Court in resolving [] factual issues" regarding whether Padilla was denied effective assistance of counsel. Among the questions posed by the trial court, the trial court directed trial counsel to:

1.  Please detail trial counsel's advice to [Padilla] regarding the punishment range he was facing in this case.

2.  Please detail trial counsel's recollection of the plea offers that were made in this case and when they were made. Please state whether those offers were accepted by [Padilla].

. . .

4.  Please detail trial counsel's advice to [Padilla] with respect to entering a plea, if any, and the reasoning behind that advice.

5.  Please state whether [Padilla] told trial counsel he wanted to accept a plea offer for prison time. If he did, please detail counsel's advice to him at that time.

6.  Please state whether counsel believes [Padilla] knowingly and voluntarily wished to proceed with the jury trial. Please explain the reasons behind that belief.

. . .

12. Please state if trial counsel ever told [Padilla] "they don't have shit," or words to the extent, in describing the State's case. If so, please describe the context of that conversation.

7

. . .

Trial counsel filed an affidavit that included the following responses to the questions posed:

1.  2 to 20 years TDCJ[.]

2.  I think he offered 2 TDCJ in the very beginning.  He was offered 3 right before trial began.  Both were rejected.

. . .

4.  I advised him to take the 3 year offer.

5.  He turned down the 3 year offer.

6.  He knew we were going to trial and did so knowingly.

. . .

12.  Never said that.

. . .

(Footnote added.)

After trial counsel filed his affidavit, the State filed a response to Padilla's motion for new trial, arguing that Padilla's assertion that trial counsel had told him "the worst case [Padilla] was looking at was a few days in the county jail" was "unbelievable" and "directly contradicted" by his trial counsel's affidavit, which stated he advised Padilla "of the appropriate range of punishment, 2 to 20 years in the Texas Department of Corrections," which was the appropriate range of

8

punishment given Padilla "had one previous felony conviction for which he served 8 years in the Texas department of Corrections."

Padilla replied arguing that the "uncontradicted evidence as to the two year offer is that 1) [trial counsel] turned it down without speaking to his client, and 2) rejected []Padilla's desire to accept that offer." The State filed a response stating that:

> [Padilla] misse[d] the fact that Trial Counsel was never directly asked in the Court's order for affidavit whether he or [Padilla] declined the offer. However, given the context of the question he was asked: "Please state whether those offers were accepted by Movant," the Court can infer that both the two and three year offers were not "accepted by Movant."
>
> [Padilla] swore in his affidavit that "If not for [Trial Counsel's] faulty advice, I would have taken the two year offer." [Padilla] concedes he had an opportunity to accept the two-year offer, and did not do so. From the remainder of [Padilla's] affidavit, it is clear that he and trial counsel had vivid discussions about whether he should accept a plea for two years. Even if Trial Counsel did reject a two year plea without talking to [Padilla], by [Padilla's] own arguments the error would have been harmless.

The trial court denied Padilla's motion for new trial.[5] This appeal ensued.

## Ineffective Assistance of Counsel

The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. This right to counsel is more than the

---

[5] There was no hearing on the motion for new trial.

9

mere presence of a lawyer; it is a right to effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (observing that "the right to counsel preserves the fairness, consistency, and reliability of criminal proceedings by ensuring that the process is an adversarial one"). Effective assistance is not "errorless counsel," but rather "objectively reasonable representation." *Lopez*, 343 S.W.3d at 142.

We evaluate claims that counsel was constitutionally ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the appellant must show that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694; *Lopez*, 343 S.W.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The appellant must establish both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

The determination of whether an appellant received effective assistance of counsel turns on the facts of each case. *Thompson v. State*, 9 S.W.3d 808, 813

10

(Tex. Crim. App. 1999). When conducting a *Strickland* analysis, we look to the totality of the representation and particular circumstance of each case to determine counsel's effectiveness. *Id.* (citing *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689. To overcome the presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. Any judicial review must be "highly deferential" to trial counsel and avoid the "distorting effects of hindsight." *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (citing *Strickland*, 466 U.S. at 669).

**Standard of Review**

When a defendant asserts ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We view the evidence in the light most favorable to the ruling and reverse only if no reasonable view of the record could support the ruling. *Id.* (citing *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763

11

(Tex. Crim. App. 2006); *Dixon v. State*, 455 S.W.3d 669, 683 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (same).

Absent factual findings regarding the denial of a motion for new trial, a reviewing court implies findings that support the trial court's ruling on the motion when such implicit findings "are both reasonable and supported in the record." *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) (citing *Charles v. State*, 146 S.W.3d 204, 213 (Tex. Crim. App. 2004)). A trial court "is the sole factfinder and judge of appellant's and counsel's credibility at the motion for new trial hearing, both during live testimony and in affidavits." *Riley v. State*, 378 S.W.3d 453, 459 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018).

"Appellate courts must show almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Id.* at 458; *Tucker v. State*, 456 S.W.3d 194, 216 (Tex. App.—San Antonio 2014, pet. ref'd) (same); *see also Ex parte Faust*, No. 09-18-00462-CR, 2019 WL 1549037, at *2 (Tex. App.—Beaumont Apr. 10, 2019, no pet.) (not designated for publication) (noting reviewing court must "afford almost total deference to a trial court's factual findings, especially findings based on credibility and demeanor" because trial court "is the sole finder of fact"). The "same deferential review" applies regardless of whether the

affidavits are uncontroverted, and a trial court is "free to disbelieve an affidavit, especially one unsupported by live testimony." *Riley*, 378 S.W.3d at 457. If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when "no reasonable view of the record could support the trial court's ruling." *Id.* at 457; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (same).

### Discussion

Padilla argues as his sole issue on appeal that trial counsel denied him his right to accept a favorable two-year plea bargain offer by rejecting the plea before presenting it to him for consideration.

It is well settled that a criminal defense counsel's failure to inform his client of a plea offer made by the State "falls below an objective standard of professional reasonableness." *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013). Padilla's argument that his trial counsel failed to inform him of the two-year plea, however, is inconsistent. Padilla argues at one time that he did not know about the two-year offer at all, at other times that his trial counsel turned down the two-year offer without consulting him first, and at yet other times that Padilla turned down the two-year offer at trial counsel's urging. For example, in his

13

affidavit attached to his motion for new trial Padilla states that he wanted to take the two-year offer but was talked out of it:

> When I told [my trial counsel I wanted to take the two year offer, he talked me out of it, and told me that where was no way I would go to prison in this case. He claimed the worst I was looking at was a few days in the county jail. Based on his representations, and against my better judgment, I allowed him to set the case for trial instead of taking the two year offer.[6]

Then, in the body of his motion for new trial, Padilla states that his trial counsel "initially rejected the two year plea bargain offer without even discussing it with hi[m] first." And on appeal, Padilla argues that "[o]nly the three-year offer was presented" to him and that his trial counsel rejected the two-year plea bargain "before presenting it to [Padilla] for consideration."

The trial court requested that trial counsel submit an affidavit addressing his communications with Padilla regarding the potential sentence for the charged offense and the State's plea bargain offers. In response to the trial court's question regarding any plea bargain offers, where the trial court inquired "whether those offers were accepted by [Padilla]," trial counsel responded that the State "offered a 2 TDJC in the very beginning [and] 3 right before trial" and "both were rejected." The affidavit does not indicate who rejected the two-year offer—Padilla or his

---

[6] In his motion, Padilla argued the State "repeatedly made low single digit plea bargain offers to the Defendant," who "was made to reject those plea bargain offers in front of the Court." It is unclear from the record how Padilla "was made" to reject the offers "in front of the Court."

14

counsel, but contrary to Padilla's argument, trial counsel's affidavit does not state or suggest that counsel rejected the two-year offer without Padilla's consent or knowledge. Rather, trial counsel stated in his affidavit that he told Padilla the punishment range he was facing in the case was "2 to 20 years TDJC," and that Padilla "knew we were going to trial and did so knowingly." While trial counsel's affidavit does not address any advice he gave Padilla with respect to accepting or rejecting any plea bargain offer, trial counsel stated in his affidavit that he advised Padilla "to take the 3 year offer" and Padilla "turned [it] down." Indeed, Padilla does not dispute that the three-year offer was conveyed to him and that he rejected the offer.[7]

Garcia testified in her sworn statement that Padilla's counsel "turned down the plea deal of 2 years, which [] caught Mr. Padilla by surprise." According to Garcia, counsel told them that he was "offered a 2[-]year TDC plea deal, I of course turned it down, because we are not accepting any prison time. [] Legally I have to notify you of the offer and I did try to find you after but I couldn't find you." She claimed that Padilla was "taken by surprise" about counsel "turning down the 2-year deal" and that he asked trial counsel whether he should take the deal, and counsel told him it was his call and he thought Padilla "didn't want to

---

[7]     Padilla does not complain on appeal about the three-year plea bargain. He only complains about the two-year plea bargain, arguing the offer was not conveyed to him by his trial counsel.

15

have any prison time if possible." She acknowledged that trial counsel told Padilla that he had to "legally [] notify you of the offer."

To the extent there were inconsistencies in the statements from Padilla, Garcia, and trial counsel concerning trial counsel's communications with Padilla regarding the two-year offer, the trial court was free to assess their credibility and conclude that Padilla did not receive ineffective assistance of counsel. We afford almost total deference to the trial court's implied resolution of the underlying factual determinations supporting denial of the motion when based solely on affidavits. *Manzi v. State*, 88 S.W.3d 240, 243–44 (Tex. Crim. App. 2002).

Padilla's affidavit states that his counsel communicated the two-year deal to him and that based on the advice of his counsel, he rejected the two-year offer and allowed his counsel "to set the case for trial instead of taking the two-year offer." Trial counsel also stated in his affidavit that the State offered a two- and three-year deal and that both "were rejected." The trial court was at liberty to resolve any conflicts in this evidence. *See Riley*, 378 S.W.3d at 458 (noting reviewing courts must give "almost total deference" to questions "that turn on an evaluation of credibility and demeanor"); *Ex parte Faust*, 2019 WL 1549037, at *2 (noting that because trial court "is the sole finder of fact," reviewing court must "afford almost total deference" to trial court's factual findings, "especially findings based on credibility and demeanor"). Moreover, the internal inconsistencies between

Padilla's motion for new trial and his attached affidavit also may have led the trial court to believe trial counsel's testimony and disbelieve Padilla regarding his trial counsel's communications concerning plea negotiations. *See Lucero v. State*, No. 03-21-00313-CR, 2022 WL 16556833, at *7 (Tex. App.—Austin Oct. 31, 2022, no pet.) (not designated for publication) ("[I]t would not have been outside the zone of reasonable disagreement for the district court to disbelieve Lucero's claim, particularly considering that Lucero was inconsistent in describing what trial counsel had told him."). "[I]f there are 'at least two' plausible interpretations of the evidence, it is within the trial court's exclusive purview to decide which interpretation to believe." *Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021) (citing *Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim. App. 2006)).

To the extent Padilla argues that he rejected the two-year offer based on the erroneous and ineffective assistance of his counsel, we conclude the trial court did not abuse its discretion in rejecting his motion for new trial on this basis. Trial counsel's affidavit states that (1) he informed Padilla of the appropriate range of punishment for the charged offense, in this case two to twenty years; (2) that he reviewed the entire file with Padilla and advised him to take a three-year offer right before trial; and (3) that he never advised Padilla that the State "didn't have shit." Claims of ineffective assistance "must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness." *Johnson v.*

17

*State*, 432 S.W.3d 552, 555 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Lopez*, 343 S.W.3d at 142–43). Notwithstanding Padilla's argument to the contrary, the record does not affirmatively demonstrate that trial counsel provided ineffective assistance to Padilla during plea bargaining proceedings.

Because the trial court's findings turn on an evaluation of credibility and are supported by evidence, we defer to those findings. *See generally Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010); *Manzi*, 88 S.W.3d at 243–44; *Ex parte Roldan*, 418 S.W.3d 143, 148 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Considering the evidence in the light most favorable to the trial court's ruling, as we must, and given Padilla's failure to establish the first prong of the *Strickland* test, we hold the trial court acted within its discretion in denying Padilla's motion for new trial.[8] We overrule Padilla's sole issue.

## Conclusion

We affirm the trial court's judgment.

---

[8] Padilla's failure to satisfy *Strickland*'s first prong negates our need to consider the second prong concerning prejudice. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (holding that "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong").

Veronica Rivas-Molloy<br>
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).